KATHERINE ANDERSON, Plaintiff-Appellant, v. THE VILLAGE OF FOREST PARK *et al.*, Defendants-Appellees (Proviso Family Services *et al.*, Defendants).

First District (3rd Division)   No. 1—91—1884

Opinion filed October 28, 1992.

Jeffery M. Marks, of Chicago (Clark M. Raymond, of counsel), for appellant.

Fraterrigo, Best & Beranek, of Chicago (Frank Kasbohm and Matthew E. VanCleave, of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:

Plaintiff, Katherine Anderson, appeals from the dismissal of her civil rights action against defendants Village of Forest Park, village police officer Stephen Bukovack, village police officer Martin Moy, village police lieutenant Leisten, village police officer Mayman, and village paramedics Ferraro and Papelka. Plaintiff argues that: (1) the trial court erred in applying the Illinois Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act) (Ill. Rev. Stat. 1991, ch. 85, par. 1—101 *et seq.*) to her causes of action; (2) the trial court erred in applying the Federal common law immunity for public officials to her causes of action; and (3) the count for intentional infliction of emotional distress stated a cause of action.

Plaintiff's amended complaint was brought against not only the defendants listed above but against Proviso Family Services, an Illinois corporation, and Richard Arons, a social worker for Proviso.

Count I alleged the following. At about 11:35 a.m. on January 20, 1989, someone made an emergency 911 telephone call to the village police department. The caller stated that plaintiff's aunt wanted plaintiff removed from her residence. The caller requested police assistance. At about 11:40 a.m., Moy, Leisten, Ferraro, Papelka, and Arons entered plaintiff's bedroom and: (a) interrogated her for several hours; (b) searched through her dresser and other belongings; (c) refused to allow her to use the bathroom; (d) refused to allow her to change out of her nightgown and into street clothes; (e) refused to tell her why they were there other than to threaten that if she did not answer their questions, she would be involuntarily committed; (f) arrested her and refused to tell her why she was under arrest; and (g)

bodily removed her from her bed, without provocation, need, or explanation, and dragged her in her nightgown down the steps and outside. In addition, Arons paged through plaintiff's address book, telephoned people listed, and asked them questions about plaintiff. Plaintiff informed defendants that she suffered from multiple sclerosis. Plaintiff did not attempt to resist arrest or act violently. For the purported purpose of psychological observation, Ferraro, Papelka, and Arons transported plaintiff to the Foster G. McGaw Hospital in Maywood, Illinois. They arrived at the hospital around 2:37 p.m. In the emergency room, Ferraro, Papelka, and Arons made false statements about plaintiff to medical personnel.

As a result of the concerted excessive and unlawful search of plaintiff's possessions, Moy, Leisten, Ferraro, Papelka, and Arons deprived plaintiff of her rights in violation of the fourth and fourteenth amendments to the United States Constitution and of the Civil Rights Act (42 U.S.C. §1983 (1988)).

Count II alleged that the conduct alleged in count I was excessive force, and that Moy, Leisten, Ferraro, Papelka, Proviso, and Arons deprived plaintiff of her rights in violation of the fourth and fourteenth amendments to the United States Constitution and of the Civil Rights Act (42 U.S.C. §1983 (1988)).

Count III alleged that the concerted action by defendants Moy, Leisten, Ferraro, Papelka, Proviso Family Services, and Arons bodily lifting plaintiff from her bed and dragging her down the staircase when she was not resisting arrest constituted assault and battery.

Count IV alleged that as a result of the village, Moy, Leisten, Ferraro, Papelka, and Arons' taking custody of plaintiff, they owed her a duty of care. In deliberate, callous, and reckless disregard of this duty, these defendants willfully and wantonly: (a) removed plaintiff from her residence in subfreezing temperatures when they had prevented her from changing out of her nightgown and into warmer clothes and when they knew she suffered from multiple sclerosis; (b) caused plaintiff to be roughly dragged down a staircase; (c) exposed plaintiff to subfreezing temperatures for an extended period of time when they knew that she was not properly dressed for conditions and when they knew that she suffered from multiple sclerosis; (d) exposed plaintiff to numerous people, both known and unknown to her, when she was dressed only in her nightgown; and (e) otherwise breached the duty of care they owed to plaintiff. As a result, plaintiff was injured.

Count V alleged that plaintiff was discharged from the hospital and that the emergency room personnel gave her a blanket and taxi-

cab voucher for transport back home. At about 6:30 p.m., a taxicab dispatcher called the village police department and stated that she was wearing only a nightgown and could not gain entry to her residence. As a result of the call, Bukovack removed plaintiff from her residence and transported her to a mental health center in Hines, Illinois. Personnel at the mental health center refused to accept plaintiff because Bukovack did not have the proper Illinois Department of Mental Health and Developmental Disabilities forms. Bukovack then transported plaintiff to the village police station, where plaintiff was confined to a holding cage. Mayman obtained transfer papers from the hospital to allow the mental health center to accept plaintiff by providing false information to the hospital personnel. Ferraro and Papelka transported plaintiff to the mental health center, arriving at about 9:10 p.m., and made false statements to the personnel there regarding plaintiff. Plaintiff was discharged at about 1:25 a.m. on January 21, 1989. As a result of the unauthorized arrest and holding of plaintiff, the village, Bukovack, Mayman, Ferraro, and Papelka deprived plaintiff of her rights in violation of the fourth and fourteenth amendments to the United States Constitution and of the Civil Rights Act (42 U.S.C. §1983 (1988)).

Count VI alleged the following. As a result of the village, Bukovack, Mayman, Ferraro and Papelka's taking custody of plaintiff, they owed plaintiff a duty of care. In deliberate, callous, and reckless disregard of this duty, they willfully and wantonly: (a) exposed plaintiff to subfreezing temperatures for an extended period of time when they knew that she was not properly dressed for conditions and when they knew that she suffered from multiple sclerosis; (b) wilfully and wantonly exposed plaintiff to numerous people, both known and unknown to plaintiff, when she was dressed only in her nightgown; and (c) otherwise breached the duty of care.

Count VII alleged that the village, Bukovack, Mayman, Ferraro, and Papelka held plaintiff in custody against her will and without legal basis and thereby falsely imprisoned plaintiff.

Count VIII alleged that defendants' conduct toward plaintiff was outrageous in nature, that defendants intended to cause plaintiff to suffer emotional distress, and that plaintiff suffered severe emotional distress.

The village filed an amended motion to dismiss the complaint against it (counts IV, VI, VII, and VIII), pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619), in which it argued the following. The individual defendant's actions were authorized by the Mental Health and Developmental Dis-

abilities Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—606). Any individual liability was immunized pursuant to the Tort Immunity Act and/or the qualified good-faith immunity applicable to plaintiff's constitutional claims.

Moy, Leisten, Ferraro, and Papelka, filed a motion to dismiss counts I through IV and VIII pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619), in which they argued the following. The village police officers and paramedics acted within the procedural requirements of the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—606), which authorized a peace officer to transport a person to a mental health facility as a result of his personal observation that he had reasonable grounds to believe that the person was subject to involuntary admission and was in need of immediate hospitalization to protect the person or others from physical harm. Upon his arrival, Officer Moy found plaintiff in bed, there was a strong odor of "bowel" and urine, there was bowel excrement on her bed and nightgown, and plaintiff was angry and defensive. Arons determined that plaintiff was suffering from extreme paranoia, was highly defensive, and was unable to care for herself. Moy was unable to reach plaintiff's physician, and Arons prepared a petition for involuntary admission.

In support of the petition for involuntary admission, Arons stated the following. He believed that plaintiff was mentally ill and unable to provide for her basic physical needs so as to protect herself from serious harm and that she needed immediate admission to prevent such harm. Plaintiff was in the care of her 80-year-old aunt and had remained in bed for four months. Plaintiff had recently begun to defecate in bed and had not attempted to provide self-care or other hygiene. Plaintiff deflected his questions, and her thoughts appeared tangential and irrelevant. "Insight" was "absent," and "paranoid features" were significant. Plaintiff refused to participate in attempts at self-care or protective behavior. Plaintiff possibly had multiple sclerosis, but she would not discuss this.

It was also argued that the officers and paramedics were immunized from liability for their actions pursuant to section 6—105 of the the Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 6—105). Defendants' decision as to whether plaintiff required involuntary admission was discretionary pursuant to section 2—201 of the Tort Immunity Act. (Ill. Rev. Stat. 1991, ch. 85, par. 2—201.) In addition, these individuals were entitled to qualified good-faith immunity with

respect to counts I and II. The allegation of intentional infliction of emotional distress was insufficient to state a cause of action.

A police report on the incident was attached as an exhibit. Plaintiff was Irene Chulos' niece by marriage and asked four to five months ago if she could stay with Chulos for several days until she found a place to stay. Chulos stated that she could not cope with plaintiff anymore. When Moy went to the home, he found the door unlocked and ajar. He announced his office. A voice was heard upstairs, and the officer began talking with a woman who stated that she was sick and did not wish to speak to anyone. The officer persuaded the woman to speak face to face with him after she declined numerous times to give any information. When he entered the bedroom, he observed plaintiff sitting up in bed. He smelled a strong odor of "bowel" and urine. Excrement was later observed on her bed and nightgown.

Chulos provided plaintiff's name. When the officer confronted plaintiff with her name, she became very angry and inquired about where the officer received the information. The officer attempted to perform a reality test (time, date, name, situation, etc.), and again plaintiff became angry and defensive and asked why he needed to know. The officer then requested the assistance of the police department's social worker. When Arons arrived, he was informed of the situation and attempted to speak with plaintiff after identifying himself in the officer's presence. Again, plaintiff became highly defensive when interviewed. Arons determined that she was suffering from extreme paranoia, defensiveness in her actions, and the inability to care for her health and emotional being. Because there was no cooperation by plaintiff and her physician could not be reached, Arons decided to petition her to a medical facility to check on her physical and mental health. She was taken to the ambulance after she made numerous attempts to resist.

Arons alleged in the petition for involuntary admission that plaintiff was mentally ill and that, because of her illness, she was unable to provide for her basic physical needs so as to guard herself from serious harm. He also alleged that plaintiff was reasonably expected to inflict serious physical harm upon herself or another in the near future.

The ambulance report form indicated that plaintiff was disoriented.

Attached to defendants' reply to plaintiff's response to defendants' motion to dismiss were the affidavits of Moy, Bukovack, and Papelka swearing that they had personal knowledge of the matters con-

tained in attached fire and police department reports and that the information contained therein was true and accurate. Two fire department reports for two transports were attached to Papelka's affidavit. Both reports stated that plaintiff was disoriented. The report attached to Moy's affidavit described the initial contact with plaintiff. The report attached to Bukovack's affidavit described the events subsequent to plaintiff's evaluation at the hospital. This report stated that after evaluation, the hospital was to transfer plaintiff to the mental health center but instead "accidentally" released her. Bukovack found plaintiff lying on the ground in front of her home after she was dropped off by the taxicab. She was physically unable to take care of herself, she was shivering, she had no coat and only hospital blankets, and she had no house key. He took her to the station and fed her. Mayman got the proper papers from the hospital to transfer plaintiff to the mental health center where she was taken.

There was a third motion to dismiss but it does not appear in the record. According to a copy of this motion in defendants' appendix, Bukovack, Mayman, Papelka, and Ferraro moved to dismiss counts V, VI, VII, and VIII, pursuant to section 2—619. This court cannot consider an unofficial xerox of a portion of the record. (See 134 Ill. 2d R. 324 (the clerk shall prepare and *certify* the record on appeal).) Because of the motion's absence, that portion of the order granting the section 2—619 motion is affirmed. (See *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (appellant has burden to present sufficiently complete record of proceedings at trial to support claim of error, and in absence of such record, it will be presumed that the trial court's order was in conformity with law and had sufficient factual basis).) Count V was not challenged in any of the two other motions to dismiss that appear in the record, and therefore its propriety will not be addressed on appeal.

On April 30, 1991, the motions to dismiss of the village, Moy, Leisten, Ferraro, and Papelka were granted, and the trial court found in accordance with Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) that there was no just reason for delaying enforcement or appeal. The order was amended *nunc pro tunc* on May 16, 1991, to include Bukovack and Mayman as defendants who were dismissed with prejudice.

Plaintiff appeals from the dismissal of her amended complaint. Plaintiff first argues that the immunities provided by sections 2—201 and 6—105 of the Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, pars. 2—201, 6—105) do not apply to civil rights actions and therefore did not apply to counts I, II, and V.

Defendants respond that the argument that the Tort Immunity Act did not apply to section 1983 claims was waived because plaintiff did not make the argument in the trial court.

We hold that the issue of the Act's applicability was not waived because it was raised below in one of the motions to dismiss.

Section 3—606 of the Mental Health and Developmental Disabilities Code provides in part:

"A peace officer may take a person into custody and transport him to a mental health facility when, as a result of his personal observation, the peace officer has reasonable grounds to believe that the person is subject to involuntary admission and in need of immediate hospitalization to protect such person or others from physical harm." Ill. Rev. Stat. 1991, ch. 91½, par. 3—606.

Section 2—201 of the Tort Immunity Act provides:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." Ill. Rev. Stat. 1991, ch. 85, par. 2—201.

Section 6—105 of the Tort Immunity Act provides:

"Neither a local public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others." Ill. Rev. Stat. 1991, ch. 85, par. 6—105.

"Injury" is defined in the Tort Immunity Act as:

"death, injury to a person, or damage to or loss of property. It includes any other injury that a person may suffer to his person, reputation, character or estate which does not result from circumstances in which a privilege is otherwise conferred by law and which is of such a nature that it would be actionable if inflicted by a private person. 'Injury' includes any injury alleged in a civil action, whether based upon the Constitution of the United States or the Constitution of the State of Illinois, and the statutes or common law of Illinois or of the United States." Ill. Rev. Stat. 1991, ch. 85, par. 1—204.

Section 1983 of the Civil Rights Act provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage *** subjects, or causes to be subjected, any citizen *** to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ***." 42 U.S.C. §1983 (1988).

*Firestone v. Fritz* (1983), 119 Ill. App. 3d 685, 689, 456 N.E.2d 904, 908, held that a complaint's allegation of a violation of constitutional rights was not barred by the Tort Immunity Act, which applied only to tort actions. The court relied upon *Luker v. Nelson* (N.D. Ill. 1972), 341 F. Supp. 111, 117 (history of Tort Immunity Act suggests that the Illinois legislature never considered it to apply to section 1983 suits), and *Skrapits v. Skala* (N.D. Ill. 1970), 314 F. Supp. 510, 511 (section 8—102 of the Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 8—102) providing for notice to public entity did not apply to section 1983 action).

In *Hampton v. City of Chicago* (7th Cir. 1973), 484 F.2d 602, 607, the court held that conduct that was wrongful under sections 1983 and 1985(3) (42 U.S.C. §§1983, 1985(3) (1988)) could not be immunized by the Tort Immunity Act because it was State law. Under the doctrine of the supremacy clause of the United States Constitution, a State immunity defense could not control a Federal statute. *Hampton*, 484 F.2d at 607.

■ Although the Tort Immunity Act refers to torts in its title, "injury" is defined in the Act as including any injury in a civil action, whether based on Illinois or United States law, including common law, statutes, and constitutions. (Ill. Rev. Stat. 1991, ch. 85, par. 1—204.) Section 2—201 provides immunity from liability for "injury" when the official exercises discretion. (Ill. Rev. Stat. 1991, ch. 85, par. 2—201.) Section 6—105, concerning the failure to make an adequate examination, does not refer to injury. (Ill. Rev. Stat. 1991, ch. 85, par. 6—105.) Therefore, on its face, at least, section 2—201 would cover section 1983 claims.

But, even if the Tort Immunity Act technically covers section 1983 claims, a State immunity defense cannot control a Federal statute. (*Hampton*, 484 F.2d at 607.) We hold that the Tort Immunity Act does not apply to plaintiff's section 1983 claims because of the supremacy clause of the United States Constitution. U.S. Const., art. VI, cl. 2.

Plaintiff next argues that section 6—105 of the Tort Immunity Act did not apply to the State law claims because she did not allege either a failure to make an examination or a failure to make an adequate examination. In addition, plaintiff argues that her injuries were

not caused by a failure to perform an adequate mental examination but by the violation of her constitutional rights.

Defendants argue that all their actions were taken in an effort to have plaintiff examined by a doctor and that the actions fell within section 3—606 (Ill. Rev. Stat. 1991, ch. 91½, par. 3—606).

Because section 6—105 cannot be a bar to a Federal section 1983 claim, we must determine only whether State law counts III, IV, VI, VII, and VIII were properly dismissed pursuant to the section.

■ The issue is whether plaintiff alleged injury that was the result of the failure to make an adequate examination of her for the purpose of determining whether she had a disease or condition that would constitute a hazard to the health or safety of herself or others. Plaintiff alleges injury resulting from: (1) an unlawful search of her residence; (2) excessive force in removing her from bed and in transporting her to the hospital; (3) battery arising from being lifted from bed and being dragged down the staircase; (4) being exposed to subfreezing temperatures; (5) being exposed herself in public in her nightgown dress; (6) being arrested and held pending arranging transfer to a mental health center; (7) false imprisonment; and (8) severe emotional distress.

The alleged conduct was in connection with defendants' attempt to determine whether plaintiff needed a physician's attention. But the force, invasion of privacy, and other abuse allegedly committed by defendants did not relate to the *adequacy* of their determination of whether plaintiff needed a doctor's attention. Rather, plaintiff's complaint concerns the manner in which defendants acted in seeking to assist her. Therefore, counts III, IV, VI, VII, and VIII were improperly dismissed pursuant to section 6—105. That there was statutory authorization for peace officers to transport a person to a mental health facility, under certain circumstances, is not a basis on which to dismiss plaintiff's State law counts that allege the unlawful conduct of assault and battery, wilful and wanton behavior in transporting plaintiff, false imprisonment, and causing severe emotional distress.

Plaintiff next argues that section 2—201 of the Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 2—201) did not apply because defendants' actions were ministerial rather than discretionary. Plaintiff points to the ministerial acts of physically taking her into custody, transporting her to the hospital and to the mental health center, and providing information about her to medical providers. Defendants argue that their actions were discretionary because they involved decisions about how to best transport plaintiff and whether to attempt to dress her in street clothes.

■ Ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority and without reference to the official's discretion as to the propriety of the acts. (*Munizza v. City of Chicago* (1991), 222 Ill. App. 3d 50, 55, 583 N.E.2d 561, 565.) An official's determination of whether and how to obtain an involuntary medical evaluation of someone cannot be performed in a prescribed manner because of the judgment required. We hold that the decision to remove plaintiff from her bedroom and seek medical evaluation was discretionary, and the conduct alleged in counts III, IV, VI, VII, and VIII fell within the scope of section 2—201 of the Tort Immunity Act.

■ But plaintiff next argues that discretionary acts immunity does not apply because defendants allegedly acted wilfully, wantonly, and in bad faith.

There is an exception of wilful and wanton conduct to the rule of public official immunity for discretionary acts. (*Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 273, 490 N.E.2d 77, 81.) In contrast to the situation of a public decision-maker making a mere mistake in judgment, wilful and wanton conduct involves an element of intent or recklessness. (*Barth*, 141 Ill. App. 3d at 273-74, 490 N.E.2d at 82.) A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others. (*Barth*, 141 Ill. App. 3d at 275, 490 N.E.2d at 83.) Therefore, counts IV and VI, which alleged wilful and wanton conduct, and count VIII, which alleged intentional conduct, were not subject to dismissal under section 2—201.

Plaintiff next argues that the Federal common law discretionary immunity for public officials addressed in *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727, did not apply because defendants' actions were ministerial rather than discretionary. In addition, she argues that the *Harlow* immunity did not apply when the discretionary act violated a clearly established statutory or constitutional right.

Defendants argue the following in connection with the section 1983 counts. Federal common law discretionary immunity applied to defendants as long as their actions were objectively reasonable. Section 3—606 of the Illinois Mental Health and Development Disabilities Code (Ill. Rev. Stat. 1991, ch. 91½, par. 3—606) permitted defendants to take plaintiff into custody. Because of the extreme nature of the situation and the clear authority provided to defendants, their actions were reasonable under the circumstances. There are no facts supporting plaintiff's contention that defendants used excessive force. Even if excessive force

was used, under the circumstances defendants' conduct was objectively reasonable and they were immunized under qualified good-faith immunity. Defendants neither knew nor should have known that their conduct could have impinged on plaintiff's constitutional rights.

In *Harlow* (457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727), senior aides and advisors of the United States president were defendants in a suit alleging violation of constitutional and statutory rights. The Court stated the following. Certain government officials had absolute immunity from suit but, in general, executive officials had only a qualified or "good-faith" immunity. (*Harlow*, 457 U.S. at 807, 73 L. Ed. 2d at 403, 102 S. Ct. at 2732.) Government officials performing discretionary functions generally were shielded from liability for civil damages insofar as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. (*Harlow*, 457 U.S. at 818, 73 L. Ed. 2d at 410, 102 S. Ct. at 2738.) The objective reasonableness of an official's conduct should be examined. (*Harlow*, 457 U.S. at 818, 73 L. Ed. 2d at 410, 102 S. Ct. at 2738.) On a summary judgment motion, the judge can determine the applicable law and whether it was clearly established. (*Harlow*, 457 U.S. at 818, 73 L. Ed. 2d at 410, 102 S. Ct. at 2738.) If the law was clearly established, the immunity defense should fail, barring extraordinary circumstances and proof that the official neither knew nor should have known of the relevant legal standard, because a reasonably competent public official should know the law governing his conduct. *Harlow*, 457 U.S. at 818-19, 73 L. Ed. 2d at 411, 102 S. Ct. at 2738.

■ In *Malley v. Briggs* (1986), 475 U.S. 335, 89 L. Ed. 2d 271, 106 S. Ct. 1092, the Court held that in order to determine whether one is immune under section 1983, it must be determined: (1) if there was a common law immunity from tort actions when the Civil Rights Act was enacted in 1871; and (2) whether section 1983's history or purposes nonetheless counsel against recognizing the same immunity in section 1983 actions. (*Malley*, 475 U.S. at 339-40, 89 L. Ed. 2d at 277, 106 S. Ct. at 1095.) The parties do not address the issue of whether police officers and paramedics can be immune from section 1983 liability under the Federal doctrine of qualified or good-faith immunity, according to the test of *Malley*. But even if these defendants were qualifiedly immune, it cannot be determined on this record whether defendants violated clearly established fourth amendment law in connection with the search of plaintiff's belongings and the use of force. Because qualified immunity is an affirmative defense, defendants had the burden of proving either that the law was not clearly established or, if the law was clearly established, that defendants neither knew nor should have

known of the relevant legal standard. (*Alexander v. Alexander* (6th Cir. 1983), 706 F.2d 751, 754.) Defendants here did not meet this burden. In addition, because of the affirmative nature of the defense, it must be pleaded by defendant and thus is not an appropriate ground to support a motion to dismiss. (*La Salle National Bank v. County of Lake* (N.D. Ill. 1984), 579 F. Supp. 8, 13 n.7.) Claims of qualified immunity are premature prior to the defendant filing an answer. *Gavrilles v. O'Connor* (D. Mass. 1984), 579 F. Supp. 301, 305.

The dismissal of counts I and II, which alleged section 1983 claims, is reversed on the basis that the trial court prematurely resolved the issue of qualified immunity. Perhaps with a more developed factual record upon a motion for summary judgment, the trial court can determine whether defendants should be immune for the allegedly unconstitutional behavior. See *Maag v. Wessler* (9th Cir. 1991), 944 F.2d 654, 657 (it was clear from officers' *depositions* that they knew that they could take into protective custody any person who appeared to be a danger to himself and that they acted in reasonable good faith, and thus the court found that the officers were immune in the section 1983 case filed by a person taken into custody for medical evaluation).

■ Plaintiff finally argues that count VIII properly pleaded an action for intentional infliction of severe emotional distress, as set out in *McGrath v. Fahey* (1989), 126 Ill. 2d 78, 533 N.E.2d 806. According to *McGrath*, the elements of this tort are: (1) the conduct must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. (*McGrath*, 126 Ill. 2d at 86, 533 N.E.2d at 809.) The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. *McGrath*, 126 Ill. 2d at 86, 533 N.E.2d at 809, citing Restatement (Second) of Torts §46, Comment *j*, at 77-78 (1965).

The trial court properly dismissed count VIII on the basis that it did not allege extreme and outrageous conduct.

The dismissal of counts III, V, VII, and VIII is affirmed, the dismissal of counts I, II, IV, and VI is reversed, and the case is remanded.

Affirmed in part and reversed in part and remanded.

GREIMAN, P.J., and TULLY, J., concur.