In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1427

Virginia Fogle and Fatina Fogle,

Plaintiffs-Appellants,

v.

William Chevrolet/Geo, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 5960--James F. Holderman, Judge.

Argued October 2, 2001--Decided December 26, 2001

   Before Posner, Easterbrook, and Evans,
Circuit Judges.

   Posner, Circuit Judge.  After obtaining a favorable settlement of their consumer fraud lawsuit against the defendant, an automobile dealer, in which they had charged violations of the federal truth-in-lending and odometer-tampering statutes as well as various Illinois state laws in the sale of two cars to them, the plaintiffs asked the district court to award them $44,000 (we are rounding off to the nearest $1,000) in attorney's fees for the work of theirlawyer, Andy Norman. Norman had arrived at this amount by multiplying his claimed hourly fee of $310 by the number of hours (143) that he claimed to have put in on the case. The district judge found that Norman's performance, although it had achieved significant relief for the plaintiffs-- the rescission of the contract for one of the cars and a refund of a substantial part of the purchase price of the other--had been mediocre. Norman was "in the bottom-tier skill-wise of this specialty [consumer fraud litigation] based on his performance in this case" and $310 was not his real hourly fee. The judge cut Norman's hours to 60 and his fee to $185, and so awarded the plaintiffs only $11,000 in attorney's fees.

When computing a lawyer's fee under a fee-shifting statute, the judge's objective is to approximate the fee the lawyer would have obtained in the market for legal services. People Who Care v. Rockford Board of Education, No. 01-1784, 2001 WL 1512907 (7th Cir. Nov. 29, 2001); Pressely v. Haeger, 977 F.2d 295, 299 (7th Cir. 1992). The judge is trying to "mimic the market in legal services." Gaskill v. Gordon, 160 F.3d 361, 363 (7th Cir. 1998). One way he can do this, the most common way in fact, is to estimate the number of hours that the lawyer would have devoted to the case in question, and the hourly rate he would have charged, had these determinants of the fee been determined by the market. In re Synthroid Marketing Litigation, 264 F.3d 712, 718 (7th Cir. 2001); Bankston v. Illinois, 60 F.3d 1249, 1256 (7th Cir. 1995); Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993); In re Continental Illinois Securities Litigation, 962 F.2d 566, 568, 572 (7th Cir. 1992). The two determinants are sometimes reciprocals. A lawyer's hourly rate may be above average because he can get the work done in fewer hours, Gusman v. Unisys Corp., supra, 986 F.2d at 1150, or because though he devotes the same number of hours to the case as an average lawyer would and so his aggregate fee is higher, his endeavors provide more value to the client by increasing the likelihood and (or) amount of a favorable judgment. Id. So there is no single, market-wide fee for a given case, and this requires the judge to consider the quality of the particular lawyer as well as the amount of time that he devoted to the case. Id.; Eddleman v. Switchcraft, Inc., 965 F.2d 422, 425 (7th Cir. 1992); Star Financial Services, Inc. v. AASTAR Mortgage Corp., 89 F.3d 5, 17 (1st Cir. 1996).

The best evidence of the lawyer's quality is the fee he commands in the market, Batt v. Micro Warehouse, Inc., 241 F.3d 891, 895 (7th Cir. 2001); Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 407-08 (7th Cir. 1999); Gusman v. Unisys Corp., supra, 986 F.2d at 1150, but such evidence may not be available if the lawyer is usually compensated by a-court-awarded fee, which is Norman's situation. He has had few paying clients as it were and only two who have ever paid him $310 an hour and those for only a few hours. Given the well-known informational

problems in the legal-services market, a lawyer's ability to persuade the very occasional client to pay a very high hourly rate is poor evidence of the lawyer's market value. In fact, it is evident that Norman could not sell all or even a decent fraction of his time at $310, for if he could, he would not have taken this case, where the payoff (even if valued at $310 per hour) was contingent because he could not be certain of prevailing.

In the absence of a reliable market test of his own services, Norman had to show that lawyers of comparable ability commanded the rate he was asking the judge to assess. Blum v. Stenson, 465 U.S. 886, 895 and n. 11 (1984); Small v. Richard Wolf Medical Instruments Corp., 264 F.3d 702, 707 (7th Cir. 2001); Batt v. Micro Warehouse, Inc., supra, 241 F.3d at 894; Uphoff v. Elegant Bath, Ltd., supra, 176 F.3d at 408; Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999); Pressely v. Haegert, supra, 977 F.2d at 299. To this end, Norman submitted the affidavit of a lawyer named James Wilber who does not practice law in Illinois or in any federal court, does not even live in Illinois, has not practiced law since 1990, and made no study of the Chicago (or any other) consumer fraud litigation lawyer market but instead relied on Norman's own self-serving self-evaluation. His conclusion that Norman's market value is indeed $310 (or higher, Wilber attested with a flourish) is groundless, the affidavit worthless and inadmissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). See General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997); Dhillon v. Crown Controls Corp., 269 F.3d 865, 869-70 (7th Cir. 2001) (expert's failure to show that opinion is product of reliable principles and methods renders testimony inadmissible); People Who Care v. Rockford Board of Education, 111 F.3d 528, 537-38 (7th Cir. 1997) ("a statistical study that fails to correct for salient explanatory variables, or even to make the most elementary comparisons, has no value as causal explanation and is therefore inadmissible in a federal court"). There are almost a million lawyers in the United States, and if Wilber's affidavit counts as evidence there will never be a case in which a

lawyer can't produce the paid affidavit of another lawyer that his market value is whatever he says it is. Norman was rightly denied a judicial award of $310 an hour.

He argues that it was double counting for the judge to reduce his hours as well as his hourly fee. Not so. A lawyer worth only $185 an hour may still put in more hours in expectation of a court-awarded fee than he would if his client were breathing down his neck. See Eddleman v. Switchcraft, Inc., supra, 965 F.2d at 425. The judge reasonably concluded that that is what Norman had done.

Affirmed.