KATTRINA CANNON, Plaintiff-Appellee and Cross-Appellant, v. WILLIAM CHEVROLET/GEO, INC., *et al.*, Defendants-Appellants and Cross-Appellees.

First District (4th Division)    No. 1—01—3332

Opinion filed June 26, 2003.

Ira M. Levin and Corie E. Schafer, both of Burke, Warren, MacKay & Serritella, P.C., of Chicago, for appellants.

Andy Norman, of Mauck & Baker, of Chicago, for appellee.

PRESIDING JUSTICE THEIS delivered the opinion of the court:
Defendants, William Chevrolet/Geo, Inc. (William Chevrolet), and Firstar Bank Milwaukee, N.A. (Firstar Bank), appeal from the trial court's order of January 12, 2001, granting judgment in favor of plaintiff, Kattrina Cannon, for violations of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (Magnuson-Moss Act or Act) (15 U.S.C. § 2310(d) (2000)), and violations of the Credit Services Organizations Act (Credit Services Act) (815 ILCS 605/1 *et seq.* (West 1998)). Additionally, defendants appeal from the award of attorney fees and costs entered on August 24, 2001.

Defendants contend that (1) the trial court erred in failing to dismiss Cannon's Magnuson-Moss Act claims for Cannon's failure to comply with the notice provisions of the Act; (2) the trial court erred in allowing Cannon to amend her complaint to add a cause of action under the Credit Services Act where William Chevrolet is not a credit service organization; (3) the trial court erred in finding that William Chevrolet committed interest rate fraud in violation of the Credit Services Act; and (4) the trial court abused its discretion in awarding attorney fees and costs. On cross-appeal, Cannon contends that the trial court erred in selecting a reasonable hourly rate in calculating the award of attorney fees. For the following reasons, we affirm in part, reverse in part and remand with directions.

## BACKGROUND

In January 1999, Cannon filed a lawsuit against William Chevrolet and Firstar Bank, in connection with her purchase of a used 1998 Nissan Sentra. Therein, she alleged in her complaint that William Chevrolet failed to disclose that the vehicle had been in an accident. She later amended the complaint to raise additional disclosure issues relating to her retail installment contract assigned to Firstar Bank. She sought recovery under various legal theories, including the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1998)) (count I), common law fraud (count II), violations of the Magnuson-Moss Act (15 U.S.C. § 2310(d) (2000)), including breach of the implied warranty of merchantability (count III), breach of the service contract (count IV), and revocation of acceptance and rescission (count V), and violations of the Credit Services Act (815 ILCS 605/1 *et seq.*) (West 1998)) (count VI). Cannon also sought to recover her costs and attorney fees. The matter proceeded to mandatory arbitration at which time Cannon was awarded $24,933.92. The award was rejected by defendants and the case was assigned to the trial calendar.

After a bifurcated bench and jury trial, on January 12, 2001, the trial court entered judgment on the jury's verdict in favor of Cannon for $34,130.82 on her Magnuson-Moss Act claims (count III, breach of implied warranty, and count V, revocation of acceptance and rescission), and entered judgment on the jury's verdict in favor of William Chevrolet on the common law fraud claim (count II). Additionally, the trial court entered judgment, based upon its findings of fact, in favor of Cannon for $471 under the Credit Services Act (count VI), and for William Chevrolet under the Consumer Fraud Act (count I). Firstar Bank, as assignee of the retail installment contract, was held jointly and severally liable for $10,807.96, the amount of money Cannon had

paid under the retail installment contract. Thereafter, Cannon filed several posttrial motions and a petition for statutory attorney fees and costs. On August 24, 2001, after an evidentiary hearing, the trial court awarded attorney fees, costs, and expenses to Cannon's attorneys, totalling $70,115.20.

## ANALYSIS

Jurisdiction

Initially, Cannon filed a motion, taken with the case, contending that we lack jurisdiction to address the arguments on appeal relating to the order of January 12, 2001, where the notice of appeal was filed on September 10, 2001, more than 30 days after the last pending posttrial motion was resolved by the trial court. Cannon specifically argues that the last posttrial motion was resolved by the order of July 6, 2001, and that the petition for attorney fees, which was not resolved until August 24, 2001, was not a posttrial motion such as to prevent the January 12 order, disposing of the main claims, from being appealable, citing *Servio v. Paul Roberts Auto Sales, Inc.*, 211 Ill. App. 3d 751, 570 N.E.2d 662 (1991), in support.

In *Servio*, the appellate court determined that a postjudgment petition for attorney fees under section 10a(c) of the Consumer Fraud Act was collateral to the underlying action and therefore did not affect the finality or appealability of the judgment in the principal action. *Servio*, 211 Ill. App. 3d at 760-61, 570 N.E.2d at 667-68.

■ This case is distinguishable from *Servio*. Here, Cannon's complaint contained a claim for attorney fees pursuant to the Magnuson-Moss Act under which she was the prevailing party. Section 2310(d)(2) of the Act specifically provides:

"If a consumer finally prevails ***, he may be allowed by the court to recover *as part of the judgment* a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate." (Emphasis added.) 15 U.S.C. § 2310(d)(2) (2000)

■ Thus, where the trial court retained jurisdiction to hear the claim for fees "as part of the judgment," it was not collateral to the underlying action. Any other judgment entered in the case before the claim for fees was ruled upon became nonfinal and nonappealable when the claim for fees was made, unless the prior judgment contained the language set forth in Supreme Court Rule 304(a) (155 Ill. 2d R.

304(a)) that there was no just reason to delay enforcement or appeal. *Dewan v. Ford Motor Co.*, 343 Ill. App. 3d 1062 (2003); *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 983-84, 640 N.E.2d 1313, 1317 (1994).

■ Here, the order of January 12, 2001, did not resolve the claim for attorney fees or contain a finding pursuant to Rule 304(a) that there was no just reason to delay enforcement or appeal. Therefore, in the absence of a Rule 304(a) finding, the January 12, 2001, order, even if final, remained unappealable until the resolution of Cannon's claim for attorney fees on August 24, 2001. *F.H. Prince*, 266 Ill. App. 3d at 983-84, 640 N.E.2d at 1317. Consequently, the notice of appeal filed on September 10, 2001, within 30 days after resolution of the attorney fee claim, was timely, providing this court with jurisdiction.

### Magnuson-Moss Act Claims

■ We next address defendants' contention that the trial court erred in denying their motions *in limine* seeking to dismiss the Magnuson-Moss Act claims of breach of implied warranty of merchantability and revocation of acceptance and rescission. Defendants argue that Cannon failed to comply with the requisite notice requirements of the Act and therefore the trial court should have granted the motions *in limine* as a matter of law. Pursuant to section 2310(e) of the Magnuson-Moss Act, no action may be brought for failure to comply with any obligation under any written or implied warranty unless the person obligated under the warranty is afforded reasonable notice and opportunity to cure such failure to comply. 15 U.S.C. § 2310(e) (2000); *Belfour v. Schaumburg Auto*, 306 Ill. App. 3d 234, 241, 713 N.E.2d 1233, 1238 (1999).

Cannon's complaint alleged that William Chevrolet was served with notice of its violations of the law and that the dealership was aware of the condition of the vehicle prior to any cause of action being brought. According to the record on appeal, no motion to dismiss or motion for summary judgment was ever filed in connection with the adequacy of those allegations pertaining to the notice requirement under the Magnuson-Moss Act. Nor do defendants argue on appeal that the allegations in the complaint were deficient. On the first day of trial, William Chevrolet filed motions *in limine* relating to the Magnuson-Moss Act claims.

■ Initially, we note that neither motion stating the requested relief has been made part of the record on appeal. An unofficial copy of the motions without a file stamp has been provided in the appendix to the brief. This court cannot consider an unofficial copy of a portion of the record. *Anderson v. Village of Forest Park*, 238 Ill. App. 3d 83, 90, 606 N.E.2d 205, 210 (1992), citing 155 Ill. 2d R. 324 (the clerk shall

prepare and *certify* the record on appeal). The appellant has the burden of presenting a sufficiently complete record of the proceedings at trial to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958, 959 (1984). In the absence of such a record, the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959.

■ Even were we to consider whether the trial court correctly ruled on the motions *in limine*, we find that defendants' arguments lack merit. One of defendants' motions sought to bar Cannon from mentioning at trial that she was refused any repairs on her vehicle because she failed to give proper notice of her warranty claims. While they argue that the trial court should have dismissed the claims at the motion *in limine* stage as a matter of law, defendants misunderstand the purpose of such a motion. Motions *in limine* are not designed to obtain rulings on dispositive matters but, rather, are designed to obtain rulings on *evidentiary* matters outside the presence of the jury. *People v. Owen*, 299 Ill. App. 3d 818, 822, 701 N.E.2d 1174, 1177 (1998). It is improper to file a dispositive motion seeking the dismissal of a claim as a motion *in limine* where it forecloses the opportunity of the opposing party to adequately respond to the motion. See *Silverstein v. Brander*, 317 Ill. App. 3d 1000, 1005-06, 740 N.E.2d 357, 361 (2000). Additionally, with regard to the motion *in limine* on the issue of rescission, defendants sought a ruling on an election of remedies, arguing inconsistent jury instructions, rather than a ruling on an evidentiary matter. Accordingly, the motions were not the proper vehicle for the relief sought by defendants.

Furthermore, when a motion *in limine* is made, the trial judge has broad discretion to grant or deny the motion or choose not to entertain the motion at all. *Schuler v. Mid-Central Cardiology*, 313 Ill. App. 3d 326, 334, 729 N.E.2d 536, 543 (2000). The motion pertaining to notice was unsubstantiated with any evidence that Cannon failed to provide proper notice. On appeal, defendants cite to Cannon's deposition testimony as evidence in support of their contention. However, that evidence was not presented to the trial court during the hearing on the motion *in limine*. The trial court therefore properly reserved its ruling on the motion to allow Cannon an opportunity to present her evidence of notice to the jury as a question of fact. The court specifically stated that "if there's no substantive evidence to set forth that there has been any notice that can be substantiated in any form then this will be granted. If not, it will be denied."

Subsequently, defendants never sought a ruling on the motions *in limine*, the trial judge then denied the motion for a directed verdict on

the notice issue, and after the close of the evidence, jury instructions were given, including instructions on the issue of notice and remedies. Defendants did not object to the jury instructions on notice, nor do they argue that the instructions were improper on appeal. Additionally, defendants failed to file a posttrial motion. Pursuant to section 2—1202(a) of the Illinois Code of Civil Procedure (735 ILCS 5/2—1202 (West 2000)), if the court denies a motion for directed verdict, the motion is waived unless the request is renewed in a posttrial motion. Accordingly, to the extent that defendants argue the insufficiency of the evidence presented at trial to support adequate notice and an opportunity to cure, they have waived such contention on appeal and we decline to review it. For all of the foregoing reasons, we affirm the decision of the trial court on the Magnuson-Moss Act claims.

Credit Services Act

■ We next address William Chevrolet's argument that the trial court erred in denying its motion for summary judgment on count VI of the amended complaint, alleging violations of the Credit Services Act. Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2000); *Sollami v. Eaton*, 201 Ill. 2d 1, 6-7, 772 N.E.2d 215, 218 (2002). Our review of the circuit court's judgment is *de novo. Sollami*, 201 Ill. 2d at 7, 772 N.E.2d at 218.

The following undisputed facts were presented on the motion for summary judgment. When Cannon entered into the transaction to purchase the used 1998 Nissan Sentra, William Chevrolet agreed to arrange for an extension of credit to finance a portion of the purchase price of the used vehicle. Cannon signed a retail installment contract with a disclosed annual percentage rate of 11.95%. Subsequently, William Chevrolet obtained financing from Firstar Bank at a lower annual percentage rate of 7.39%, which was not disclosed to Cannon. Cannon claimed that William Chevrolet had concealed the lower interest rate she could have received, and claimed that failure to disclose the actual rate obtained by the bank was a violation of the Credit Services Act. The trial court denied William Chevrolet's motion for summary judgment and ultimately granted Cannon damages for a violation of the Credit Services Act.

William Chevrolet argues that it is not a credit services organization as defined by the Credit Services Act and that the legislature did not intend to regulate the transaction at issue. Therefore, it concludes that it cannot be held liable. Relying on section 3 of the Credit Services Act, Cannon maintains that William Chevrolet is a credit services

organization by virtue of its agreeing to assist her in obtaining an extension of credit, in indeed obtaining the credit, and by receiving consideration for its services "as part of the overall transaction."

■ Section 3 of the Credit Services Act provides in pertinent part:

"(a) 'Buyer' means an individual who is solicited to purchase or who purchases the services of a credit services organization.

\* \* \*

(d) 'Credit Services Organization' means a person who, with respect to the extension of credit by others and in return for the payment of money or other valuable consideration, provides, or represents that the person can or will provide, any of the following services:

(i) improving a buyer's credit record, history, or rating[;]

(ii) obtaining an extension of credit for a buyer; or

(iii) providing advice or assistance to a buyer with regard to either subsection (i) or (ii)." 815 ILCS 605/3(a), (d) (West 1998). Recently, our supreme court addressed a similar question in determining whether the Credit Services Act applied to a transaction between a retailer and a homeowner in *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314 (2003). There, a home remodeling contractor entered into an agreement to assist homeowners in obtaining financing in connection with the contractor's installation of windows and siding at their home. The contractor filed suit to enforce the agreement, and the homeowners counterclaimed, alleging that the agreement was void under the Credit Services Act. *Midstate Siding*, 204 Ill. 2d at 316. In determining that the Credit Services Act did not apply to the transaction at issue, the court analyzed the definition of a credit services organization pursuant to section 3 of the Credit Services Act, and the legislative purpose behind the Credit Services Act.

The supreme court rejected Cannon's argument that she was required to show only that William Chevrolet received consideration "as part of the overall transaction." Rather, the court held that in examining the definition of a buyer and a credit services organization, the Credit Services Act only regulates transactions involving the payment of money or other valuable consideration *in return* for the services of the credit services organization. *Midstate Siding*, 204 Ill. 2d at 321. Therefore, "the Credit Services Act requires payment for credit services, not simply payment for other goods or services." *Midstate Siding*, 204 Ill. 2d at 322. Accordingly, where the contract in *Midstate Siding* did not provide for payment of money or valuable consideration for credit services, but rather for the payment of windows and siding to be installed, there was inadequate consideration to support a contract for credit services. *Midstate Siding*, 204 Ill. 2d at 321.

Similarly, here, we must determine whether William Chevrolet performed the credit services "in return for the payment of money or other valuable consideration." While it is undisputed that William Chevrolet assisted her in obtaining financing for her automobile purchase, and indeed obtained a loan commitment from the bank, Cannon, as the buyer, must show that she gave valuable consideration specifically for the credit services performed and not simply for other goods or services.

■ Here, there was no evidence presented in the record to support Cannon's argument that she paid a fee or gave other valuable consideration relating solely to the efforts made in obtaining the extension of credit. Rather, the evidence was that Cannon made a cash down payment for the car in the amount of $500, traded in her vehicle with a net trade value of $3,752.62, and paid a document service fee of $46.88 as part of the overall transaction to purchase the car. There was no evidence that Cannon transferred money or its equivalent to the dealership specifically for credit services. Accordingly, without evidence of such consideration, the transaction was not one regulated under the Credit Services Act and William Chevrolet cannot be considered a credit service organization.

In addition, we find that Cannon's interpretation is not consistent with the stated purpose of the Credit Services Act. Section 2 provides in pertinent part:

"(a) The ability to obtain and use credit has become of great importance to consumers who have a vital interest in establishing and maintaining their credit worthiness and credit standing. As a result, consumers who have experienced credit problems may seek assistance from credit service businesses which offer to improve the credit standing of such consumers. Certain advertising and business practices of some companies engaged in the business of credit services have worked a financial hardship upon the people of this State, often on those who are of limited economic means and inexperienced in credit matters.

(b) The purpose of this Act is to provide prospective consumers of credit services companies with the information necessary to make an informed decision regarding the purchase of those services and to protect the public from unfair or deceptive advertising and business practices." 815 ILCS 605/2 (West 1998).

Thus, the Credit Services Act is aimed at remedying problems encountered by consumers who have poor credit and seek to establish and maintain credit worthiness and credit standing. As stated by our supreme court in *Midstate Siding*:

"[T]he Credit Services Act is not intended to regulate retailers primarily engaged in the business of selling goods and services to

their customers. The goods and services provided by retailers are not generally services aimed at improving the consumer's credit or obtaining an extension of credit for the consumer, otherwise unattainable because of the consumer's poor credit history or rating." *Midstate Siding*, 204 Ill. 2d at 324, citing *Fogle v. William Chevrolet/Geo, Inc.*, No. 99—C—5960 (N.D. Ill. August 9, 2000) (mem. op.).

Here, William Chevrolet is a car dealership primarily in the business of selling and leasing cars, not primarily in the business of obtaining extensions of credit otherwise unattainable because of a consumer's poor credit history or rating. Accordingly, the legislature did not intend to include retailers, such as car dealerships, within the purview of this particular act. Consequently, we must reverse that part of the trial court's judgment granting Cannon $471 for a violation of the Credit Services Act.

Attorney Fees

We next consider defendants' arguments relating to the reasonableness of the attorney fee award. It contends that the award of fees and costs was excessive because (1) it was not comensurate with the results obtained; (2) Cannon's petition failed to delineate time spent between her different claims; and (3) time related to claims on which Cannon was unsuccessful should have been excluded. The plain language of section 2310(d)(2) of the Magnuson-Moss Act provides that an award of attorney fees to a prevailing plaintiff is within the sound discretion of the trial court and will not be disturbed on review absent an abuse of discretion. 15 U.S.C. § 2310(d)(2) (2000); *Vieweg v. Friedman*, 173 Ill. App. 3d 471, 475, 526 N.E.2d 364, 367 (1988).

Here, there was an evidentiary hearing at which the court considered the affidavits of counsel, the petitions of the attorneys, and the testimony presented by both sides. The trial judge indicated that she would enter and continue her ruling to make a determination "based upon a finding of whether or not the fees are reasonable and necessary what should be appropriately entered based on the services rendered." A transcript of the trial court's findings has not been made a part of the record on appeal. Without the transcript, we are unable to discern the trial court's reasoning and whether it abused its discretion. As stated previously, the appellant has the burden of presenting a sufficiently complete record of the proceedings at trial to support a claim of error. *Foutch*, 99 Ill. 2d at 391-92, 459 N.E.2d at 959. In the absence of such a record, the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959. Accordingly, to the extent that defendants argue the reasonable-

ness of the fees awarded, they have waived those contentions for review.

We further reject defendants' argument that the award is excessive because it is not commensurate with the damages awarded. They have cited no authority and we have found none to suggest that an award of attorney fees must be proportionate to the damages awarded. Nor was this a case where Cannon recovered only nominal damages. Here, Cannon recovered a substantial portion of the damages she requested. Furthermore, we note that under section 2310(d)(2) of the Magnuson-Moss Act (15 U.S.C. § 2310(d)(2) (2000)), attorney fees are not related to the damages awarded. "Damages are designed to compensate a plaintiff for his loss and injury, whereas the purpose of awarding attorney fees under [the Act] is to provide potential litigants with access to legal assistance so that they might pursue a remedy for their injuries or loss." *Vieweg*, 173 Ill. App. 3d at 476, 526 N.E.2d at 368.

The statute specifically refers to attorney fees "based on actual time expended." In addressing this phrase, Congress has explained that "an attorney's fee is to be based upon actual time expended rather than being tied to any percentage of the recovery. This requirement is designed to make the pursuit of consumers rights involving inexpensive consumer products economically feasible." S. Rep. No. 93—151, at 23-24 (1973). Thus, the award of attorney fees does not depend upon a plaintiff's recovery of substantial monetary damages nor does it need to be proportionate to an award of money damages. See *Berlak v. Villa Scalabrini Home for the Aged, Inc.*, 284 Ill. App. 3d 231, 237-38, 671 N.E.2d 768, 772 (1996). It is for the trial court to determine a reasonable fee, if any, in light of the particular facts and circumstances of each case. We will not substitute our judgment for that of the trial court, especially here, where we have no transcript of the trial court's findings.

Defendants further argue that an attorney must differentiate which part of his work was performed on each count of the complaint and that he may only recover his fees for those claims on which he prevails, but not on the other claims that were dismissed. The United States Supreme Court has previously addressed this issue in the context of other federal fee-shifting statutes. In *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983), the Court, in considering statutory attorney fees under a federal civil rights claim, held that when the plaintiff fails to prevail on claims that are distinct in all respects from the prevailing claims, the hours spent on unsuccessful claims may be excluded in considering the amount of reasonable attorney fees. However, the Court further explained:

"In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead [the court] should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435, 76 L. Ed. 2d at 51-52, 103 S. Ct. at 1940.

Thus, the court must evaluate whether the claims (1) involved a common core of facts or related legal theories and (2) whether the plaintiff achieved a level of success making it appropriate to award attorney fees for hours reasonably expended on the unsuccessful claims as well. *Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149 (2003) (applying the test in case involving statutory attorney fee provision of Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001 *et seq.* (1994)); *Berlak*, 284 Ill. App. 3d at 238, 671 N.E.2d at 772-73 (applying a similar analysis in case involving statutory attorney fee provision of Nursing Home Care Act (210 ILCS 45/3—602 (West 1994)).

██ While we do not disagree with defendants that generally a plaintiff is entitled to only those fees incurred on his or her prevailing claims that allow for attorney fees (*Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 235 Ill. App. 3d 70, 600 N.E.2d 1218 (1992); *Rubin v. Marshall Field & Co.*, 232 Ill. App. 3d 522, 597 N.E.2d 688 (1992)), as stated in *Hensley*, there are times where the lawsuit cannot be perceived as a series of discrete claims, making it difficult to distinguish the time spent on each claim. We find that the better reasoned approach is to follow the test outlined by the Supreme Court in *Hensley* in making that determination.

In light of our holding, and because we are reversing the trial court's judgment with respect to the Credit Services Act claim, we remand for a new hearing on the award of attorney fees to allow the trial court to reconsider whether Cannon's unsuccessful claims were sufficiently related to the successful claims, and whether Cannon achieved a level of success, making it appropriate to award fees for hours reasonably expended on the unsuccessful claims as well.

Cross-Appeal

██ Cannon's sole contention in her cross-appeal is that the trial court abused its discretion in selecting an hourly billing rate for her attorneys, Mr. Norman and Mr. Feofanov. Cannon argues that the allowed hourly rates of $190 for Mr. Norman and $125 for Mr. Feofanov, instead of the claimed rates of $310 and $225, respectively, were not supported by the record. Again, we note that the parties have not

provided this court with a transcript of the trial court's findings as to the reasonableness of the attorneys' claimed hourly rates. In the absence of such a record the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959.

Furthermore, in determining whether the trial judge abused her discretion in reaching a reasonable hourly rate, we find the case of *Fogle v. William Chevrolet/Geo, Inc.*, 275 F.3d 613 (7th Cir. 2001), to be instructive where it involved the same lawyer seeking the same hourly fee against the same defendant where much of the same evidence was presented. There, Mr. Norman garnered a reasonable hourly rate of $185 in connection with a court-awarded attorney fee. The court stated that the best evidence of a lawyer's reasonable hourly rate is the fee he commands in the market, but such evidence may not be available where much of the lawyer's compensation is by a court-awarded fee. *Fogle*, 275 F.3d at 615. As in *Fogle*, Mr. Norman testified in the present case that he has had a few paying clients, and only a handful that pay him at a rate of $310 per hour. In such a situation, the court in *Fogle* held that Mr. Norman had to show that lawyers of comparable ability commanded the rate he was asking the judge to assess. *Fogle*, 275 F.3d at 616.

In the present case, Mr. Norman did not submit any affidavits or testimony from other counsel practicing in the same market. Rather, he submitted an affidavit from James Wilber, a paid management consultant who does not practice law in Illinois, resides in Wisconsin, has not practiced law since 1990, and as the court in *Fogle* pointed out, made no study of the Chicago or any other consumer litigation lawyer market. It was for the trial court to determine the worth and weight to be given Mr. Wilber's assessment of Mr. Norman and Mr. Feofanov and we will not disturb that determination on review.

We find further support for the trial court's ruling in the record. Defendants presented evidence of the rate that lawyers of similar ability and experience in the community garnered for the type of work in question. They cited cases in which the hourly rates of $150 and $190 were appropriate. They presented the fee petition of Krohn & Moss, Ltd., the law firm that originally represented Cannon in this dispute, and the law firm where Mr. Norman previously worked. Under the fee petition submitted at the arbitration, Mr. Norman's hourly rate was fixed at $175 per hour. With respect to Mr. Feofanov, the record reveals that he was participating in his first jury trial and had been practicing consumer law for only about 1½ years. Additionally, the trial court was also vested with the discretion to consider the quality of the work

done during the course of the trial. Accordingly, based upon the record before this court, we find no abuse of discretion in the trial court's determination that the rates of $190 for Mr. Norman and $125 for Mr. Feofanov were reasonable.

For the foregoing reasons, we affirm in part, reverse in part, and remand for a new hearing on an appropriate award of fees where the trial court is to reconsider the number of hours reasonably expended in accordance with the test set forth in *Hensley*.

Affirmed in part and reversed in part; cause remanded with directions.

HARTMAN and KARNEZIS, JJ., concur.