Patricia I. EVANS, Plaintiff-Appellant,

v.

Howard W. CAMERON and Cameron, Shervey, Thrasher & Doyle, Ltd., a Wisconsin service corporation, Defendants-Respondents-Petitioners.†

Supreme Court

No. 83–2148. Argued October 30, 1984.—
Decided January 3, 1985.

(Also reported in 360 N.W.2d 25.)

---

† Motion for reconsideration pending. This motion was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

422

For the petitioner, Howard W. Cameron, there were briefs by *J. Drew Ryberg* and *Garvey, Anderson, Kelly & Ryberg, S.C.,* Eau Claire, and oral argument by *J. Drew Ryberg.*

For the petitioner, Cameron, Shervey, Thrasher & Doyle, Ltd., there was a brief and oral argument by *Francis J. Wilcox,* Eau Claire.

For the plaintiff-appellant there was a brief and oral argument by *James M. Mason,* Wisconsin Rapids.

DAY, J.   This is a review of a published decision of the court of appeals[1] reversing an order of the circuit court for Barron county, Honorable Harry F. Gundersen, circuit judge for Burnett county presiding, granting a motion to dismiss plaintiff's complaint made under sec. 802.06(2)(f), Stats., 1981–82,[2] for failure to state a claim. The issue on review is: Should the complaint against Attorney Howard Cameron and his law firm, alleging that Patricia Evans followed his advice and lied while under oath at the first meeting of creditors

---

[1] *Evans v. Cameron,* 119 Wis. 2d 376, 350 N.W.2d 728 (Ct. App. 1984).

[2] "802.06 **Defenses and objection; when and how presented; by pleading or motion; motion for judgment on the pleadings** . . . (2) HOW PRESENTED. Every defense, in law or fact, except the defense of improper venue, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or 3rd party claim shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion . . . (f) failure to state a claim upon which relief can be granted. . . ."

in a bankruptcy proceeding and that she suffered damages as a result thereof, be dismissed for failure to state a claim upon which relief can be granted?

We hold that the complaint should be dismissed for failure to state claim upon which relief can be granted. We therefore reverse the decision of the court of appeals and reinstate the order of the circuit court.

The complaint set out the following allegations which are relevant to this review:

"2. That the defendant Howard Cameron is an attorney licensed to practice law in the State of Wisconsin who resides in Rice Lake, Barron County, Wisconsin.

"3. That the firm of Cameron, Shervey, Thrasher & Doyle, Ltd., is a Wisconsin service corporation . . . . When matters complained of herein occurred, defendant Howard Cameron was, upon information and belief, a shareholder in said service corporation.

"4. That in the month of December, 1979, the plaintiff [Patricia Evans] conferred with the defendant Howard Cameron in his office at the offices of Cameron, Shervey, Thrasher & Doyle, Ltd., in Rice Lake, Wisconsin, regarding bankruptcy. At that time, the plaintiff indicated that she was desirous of filing a bankruptcy and she indicated that she had approximately $10,000.00 in cash which she wondered whether she could protect if she filed bankruptcy. The plaintiff was informed by Attorney Cameron that if she were to say that she gave that money to her mother, that she would be able to keep the money and no one would care.

"5. That again on June 2, 1980, the plaintiff asked the defendant, Howard Cameron, what to do in case the matter of the $10,000.00 cash came up at the hearing of the first meeting of creditors and she was advised that she need not worry, that it had been decided that she was to say she had given the money to her mother and that it would not be a matter of contention anyway.

"6. That upon the advise [sic] of said attorney, the plaintiff did so answer at the first meeting of creditors on June 2, 1980.

"7. As a result of her answers on that date, and as a result of the bankruptcy trustee's investigation which showed that that amount of money had never been given to plaintiff's mother by plaintiff, plaintiff is now undergoing investigation and possible prosecution for perjury.

"8. Plaintiff has suffered a great deal of mental and emotional distress and she has been required to retain counsel to represent her in the defense of the aforestated perjury.

"9. Furthermore, the bankruptcy petition of the plaintiff was dismissed.

"10. That all of these damages have been the result of the wrongful and illegal advise [sic] given to the plaintiff by Attorney Cameron.

"11. That as a result of this wrongful and illegal advise [sic] by her counsel, plaintiff is entitled not only to actual and compensatory damages, but to punitive damages as well.

"WHEREFORE, plaintiff demands judgment against the defendants jointly and severally in the amount of $100,000.00 and, in addition thereto, demands punitive damages in the sum of $200,000.00 plus her costs, disbursements and attorney's fees, as well as any other relief which is just and appropriate under the circumstances."[3]

In its memorandum opinion of September 20, 1983, the circuit court held that the motion to dismiss should be granted on the basis that, if the allegations are assumed true for purposes of the motion, the parties stood *in pari delicto*. The circuit court filed an order consistent with that opinion on September 30, 1983.

In its opinion of May 22, 1984, the court of appeals reversed the order of the circuit court. The court of appeals stated that the complaint should be reinstated

---

[3] We conclude that the only reasonable inference that can be drawn from the complaint is the one drawn by Ms. Evans' own counsel in oral argument: Ms. Evans lied under oath when she made her statement at the first meeting of creditors.

because, assuming that the allegations are true for purposes of the motion, Ms. Evans' rights against Mr. Cameron and his law firm stem from his agreement to provide legal advice and because her complaint makes allegations that, if proven, could result in relief being granted. *Evans,* 119 Wis. 2d at 377. This court accepted this review to determine whether Ms. Evans' complaint against Mr. Cameron and his firm, alleging that Ms. Evans suffered damage as a result of following Mr. Cameron's advice to lie under oath at the first meeting of creditors in the bankruptcy proceeding, stated a claim upon which relief could be granted.

■■

In their respective answers to Ms. Evans' complaint, both Mr. Cameron and his law firm deny any allegations of wrongdoing. However, to determine if a complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to a motion under sec. 802.06(2)(f), Stats., the facts pled are taken as admitted. No inference can be reached in respect to the ultimte facts alleged until resolved by judge or jury. *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 683, 271 N.W.2d 368 (1978). The purpose of the motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. *Anderson,* 85 Wis. 2d at 683. Since pleadings are to be liberally construed, a claim will be dismissed only if "it is quite clear that under no conditions can the plaintiff recover." *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1974), *quoting,* Clausen and Lowe, *The New Wisconsin Rules of Civil Procedure, Chapters 801–803,* 59 Marq. L. Rev. 1, 54 (1976).

■

*In pari delicto potior est conditio defendentis* is a doctrine which states that in the case of equal fault, the position of the defendant is stronger. *Feld & Sons v.*

*Pechner, Dorfman, Etc.*, 312 Pa. Super. 125, 139 n. 8 (1983), *review denied*, 470 A.2d 525 (1984); *Clemens v. Clemens*, 28 Wis. 637, 654 (1871). The doctrine of *in pari delicto* is an application of the principle of public policy that "[n]o court will lend its aid to a man who founds his cause of action upon an immoral or illegal act." *Clemens*, 28 Wis. at 654, *quoting*, Lord Mansfield in *Holman v. Johnson*, 1 Cowper, 341.

The doctrine of *in pari delicto* is subject to qualifications.

"And indeed in cases where both parties are *in delicto* concurring in an illegal act, it does not always follow that they stand *in pari delicto;* for there may be, and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age; so that his guilt may be far less in degree than that of his associate in the offense. And besides, there may be on the part of the court itself a necessity of supporting the public interests or public policy in many cases, however reprehensible the acts of the parties may be." *Feld & Sons v. Pechner, Dorfman, Etc.*, 312 Pa. Super. at 131 (1983), *quoting, Story Equity Jurisprudence* § 423 (14th ed. 1918).

It is clear that Ms. Evans was *in delicto*. Her act of lying while under oath in the bankruptcy proceeding was both immoral and illegal. At issue is whether the allegations of her complaint, if accepted as true for purposes of this motion, place her *in pari delicto* with Mr. Cameron requiring dismissal of her complaint. We conclude that those allegations do place Ms. Evans *in pari delicto* with Mr. Cameron.

Ms. Evans has not alleged any circumstances of oppression, imposition, hardship, undue influence, great inequality of condition or the like. Instead Ms. Evans argues that a client has the right to rely on the advice of the attorney. In the circumstances of this case, this argument is not persuasive.

There may be circumstances in which the advice given by an attorney is so complex that the client would be unaware of the wrongfulness involved in following that advice. In such circumstances, more weight may be given to the influence an attorney will have over the client and the amount of reliance which the client can justifiably place in the attorney. The wrongfulness of lying while under oath, however, is apparent. Absent some allegation of special circumstances constituting an exception to the rule of *in pari delicto* independent of the attorney-client relationship, the client's deliberate act of lying under oath places that client *in pari delicto* with the attorney who advised that client to lie.

Given that Ms. Evans and Mr. Cameron would be *in pari delicto* if the allegations of the complaint, assumed true merely for purposes of this motion, are proven, the second point of concern is whether "there may be on the part of the court itself a necessity of supporting the public interests or public policy . . . however reprehensible the acts of the parties may be." We conclude that no such overriding public policy interest exists in this case. Although the public interest is served by discouraging attorney misconduct, it would be inappropriate to promote that interest by removing the damage to those who deliberately and willfully lie under oath in bankruptcy proceedings. A court should not encourage others to commit illegal acts upon their lawyer's advice by allowing the perpetrators to believe that a suit against the attorney will allow them to obtain relief from any damage they might suffer if caught. The attorney's misconduct of advising clients to perform illegal acts should be discouraged by the threat of attorney disciplinary action.

The only other case which we have discovered which presents the same issue as that presented here reaches the same conclusion. In *Feld & Sons v. Pechner, Dorfman, Etc.*, the plaintiffs sought compensatory and punitive damages from the defendant law firm for professional malpractice. The plaintiffs allegedly suffered damages as a result of following the advice of the law firm to commit perjury, falsify exhibits and offer a potential witness against them a bribe in proceedings before the National Labor Relations Board. *Feld & Sons*, 312 Pa. Super. at 127. The Superior Court of Pennsylvania upheld the trial court's dismissal of the complaint on demurrer with modification to allow the plaintiffs to seek recovery of legal fees paid to the defendants.[4] *Feld & Sons*, 312 Pa. Super. 127–128.

Because the Pennsylvania court sought to avoid the public policy determinations involved in the doctrine of *in pari delicto,* it did not rely upon that doctrine. Instead that court upheld the dismissal of the complaint based upon the more general principle that no court will lend its aid to a person who grounds his action upon an immoral or illegal act. *Feld & Sons,* 312 Pa. Super. at 137–138.

Under the more general doctrine used in *Feld & Sons* or the doctrine of *in pari delicto,* the result in the instant case is the same. Public policy determinations are

---

[4] In *Feld & Sons,* 312 Pa. Super. 125, 139 n. 8, 141 (1983), *review denied,* 470 A.2d 525 (1984), the Pennsylvania court interpreted *Berman* as standing for the proposition that an attorney may not keep money gotten from a client in violation of the attorney's professional obligations. The Pennsylvania court therefore affirmed the order to dismiss with the exception that should the plaintiffs prove the allegations, the plaintiffs may recover any legal fees paid to the law firm. Since Evans has not alleged the payment of any fees to Cameron and his firm, this issue need not be reached in this case.

implicit in the invocations of either equitable doctrines.

Ms. Evans relies upon *Ford v. Harrington,* 16 N.Y. 285 (1857) and *Berman v. Coakley,* 243 Mass. 348 (1923). In both *Ford* and *Berman,* the plaintiff sought restitution of property transferred to the attorney as a result of an illegal transaction entered into on the attorney's advice. In both cases restitution was granted. These cases are distinguishable from the instant case. Ms. Evans has not alleged that Mr. Cameron has received any benefit at her expense. If an attorney has benefitted at the expense of a client who followed the advice of that attorney and committed an illegal act, the doctrine of *in pari delicto* is less apt to be applied. This is because of the greater possibility of undue influence if the attorney receives a benefit and because of policy to not allow an attorney to benefit from such misconduct.[5]

The court of appeals in reversing the order to dismiss relied primarily upon this court's decision in *Clemens v. Clemens,* 28 Wis. 637 (1871). *Evans,* 119 Wis. 2d at 377. In *Clemens,* a father transferred land to his son in an attempt to defraud creditors. The father then brought an action against the son to recover the transferred property including homestead property which the father mistakenly transferred and which was exempt from creditors' claims. *Clemens,* 28 Wis. at 641. This court reviewed the trial court's determination that title to the mistakenly transferred homestead property should vest in the father.

This court affirmed the trial court's decision for two reasons. First, the court held that a conveyance to defraud creditors, although invalid as to the creditors, was valid as between the parties. The rule of *in pari delicto* could not apply as to actions between those parties and

---

[5] See Footnote 4.

the father, therefore, was "entitled to the same relief with respect to the east forty [homestead property], on the ground of mistake or fraud in its insertion in the deed, as if such had not been the character of the conveyance." *Clemens,* 28 Wis. at 652.

Second, even if the father and son were *in pari delicto* as to the conveyance of the non-homestead property, "[t]he intention of the plaintiff [father] in conveying on forty acres to defraud his creditors, would by no means, either in law or in morals, justify the defendant [son] in practicing a gross fraud upon the plaintiff to procure from him the title of the other forty [homestead property], or in retaining title to it, if conveyed by mistake." *Clemens,* 28 Wis. at 652–653.

■

*Clemens* is sufficiently distinguishable to make its particular holding inapplicable to the instant case. First, the complaint did not allege any mistake on the part of Ms. Evans. Second, *Clemens* involved a claim for restitution of property transferred under the contract. In this case Ms. Evans has not alleged that Mr. Cameron has received any benefit. Finally, *Clemens* involved a claim upon a contract which was valid except as to creditors. In the instant case, Ms. Evans' damages are inseparable from her own illegal conduct. Although she allegedly had a contract with Mr. Cameron for furnishing legal advice, she had no right, under the contract or otherwise, to bring an action for damages which she suffered as a result of her own illegal conduct. Her damages did not stem from the alleged contract but from her own deliberate act.

■

Because the allegations in Evans' complaint, if proven, would show the parties to be *in pari delicto,* "it is quite clear that under no conditions can the plaintiff recover."

The decision of the court of appeals which reversed the order of the circuit court dismissing the complaint is reversed.[6]

BY THE COURT.—The decision of the Court of Appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). I do not think this court can conclude on the basis of the complaint that as a matter of law the plaintiff is *in pari delicto* with the attorney. I would remand for a trial.

WILLIAM A. BABLITCH, J. (dissenting).

"I do solemnly swear:
" . . . .
"I will not counsel . . . any defense, except such as I believe to be honestly debatable under the law of the land;
"I will employ, . . . such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any . . . false statement of fact . . .
" . . . .
"So help me God."

ATTORNEY'S OATH

Without giving her an opportunity to be fully heard, the majority opinion denies Ms. Evans her day in court.[1]

[6] Contrary to the statement in Justice Bablitch's dissent that "the majority opinion denies Ms. Evans her day in court" (Dissenting op., p. 432, *infra.*), Ms. Evans has had three days in court; one in the trial court, one in the court of appeals, and one in this court. A majority of this court has agreed with the trial court that Ms. Evans' complaint, which attempts to recover money for acting in a manner both immoral and illegal, has placed her in a position where under any rule of equity profiting by such conduct should not be permitted.

[1] The majority, opinion in footnote six, disputes this statement by saying that "Ms. Evans has had three days in court;

The majority opinion cursorily dispenses with the important public policy considerations that exist in cases involving both attorney and client misconduct (that other courts have recognized), and simply presumes an equality of relationship between an attorney and a client. Having failed in both these respects, the majority reaches an unjust result which is contrary to sound public policy. Accordingly, I dissent.

The majority opinion, for the first time in this state, applies the doctrine of "in pari delicto" on a motion to dismiss a complaint; it applies the doctrine, for the first time reported in this state, to an attorney-client relationship; it announces the rules under which the doctrine applies; and it then tells the defendant that because her complaint fails to follow those rules, she's out of court, she will not be heard.

The majority opinion correctly states that the doctrine of *in pari delicto* is subject to qualifications. P. 427, *supra.* When one party acts under "circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age", his or her guilt may be far less in degree than that of his associate

one in the trial court, one in the court of appeals, and one in this court." *Evans v. Cameron,* majority op., p. 432, *supra,* n. 6. The issue, notwithstanding the protestations of the majority opinion, in the trial court, the court of appeals and in this court, *is* whether Ms. Evans *can get into court* to have her complaint fully heard. She has not had an opportunity to present her case on the merits, she has not had the opportunity to put flesh on the bones of her complaint that might indicate that Attorney Cameron's activities were more egregious (or, as the majority says, more "immoral and illegal") than her's. Instead, the majority simply says, in effect, she lied, presumably under oath, and those actions are so utterly immoral and illegal that nothing Attorney Cameron could have done or said could be worse. The majority opinion may be right, it may be wrong, but until we know more we'll never know. The majority opinion guarantees we'll never know more.

in the offense. P. 427, *supra* (citing *Feld & Sons v. Pechner, Dorfman, Etc.*, 312 Pa. Super. 125, 131, 458 A.2d 545 (1983) (quoting, Story, *Equity Jurisprudence* sec. 423 (14th ed. 1918))).

However, the majority then upholds the trial court's dismissal of her complaint, asserting that Ms. Evans failed to allege any of these circumstances in her complaint. The majority concludes that "[a]bsent some allegation of special circumstances constituting an exception to the rule of *in pari delicto* independent of the attorney-client relationship, the client's deliberate act of lying under oath places that client *in pari delicto* with the attorney who advised the client to lie." P. 428, *supra*. How was Ms. Evens to know that she was required to allege these circumstances in her complaint given the *ex post facto* nature of the majority's opinion? What reason did she have, based on prior case law, to believe that she needed to allege these circumstances? At the very least, Ms. Evans ought to be allowed to amend her complaint in order to allege circumstances that might constitute an exception to the doctrine announced today.

There is yet another reason, in equity, unmentioned by the majority, why the application of this doctrine is inappropriate at this stage of the proceeding. That reason is public policy. "[W]here there are elements of public policy more outraged by the conduct of one than of the other, then relief in equity may be granted to the less guilty." *Berman v. Coakley*, 243 Mass. 348, 350, 137 N.E. 667, 669 (1923).

The public policy at stake in this case is the standard of conduct that should be demanded of an attorney to the client as well as to the public. Inasmuch as this case is before this court on a review of a motion to dismiss for failure to state a claim, we must assume that Ms. Evans lied, and that in all likelihood she was under

oath at the time. However, we also must assume that her lies were at the advice of her counsel, given to her on two separate occasions, followed by counsel's assurances that her prevarications would not be of any consequence.

The majority would be well advised to reflect on the words of Chief Justice Rugg in *Berman* in which the Massachusetts court refused to apply this doctrine in a similar case involving a client suing his attorney:

"The public have a *deep and vital interest* in his integrity. [citations omitted] It is a matter of profound importance from every point of view that members of the bar be men of probity and rectitude, jealous to maintain relations of utmost honesty with their clients and solicitious to protect them against legal wrong. Unflinching fidelity to their genuine interests is the duty of every attorney to his clients. *Public policy* can hardly touch matters of more general concern than the maintenance of an untarnished standard of conduct by the attorney at law toward his client. *The attorney and client do not deal with each other at arms' length.* The client often is in many respects powerless to resist the influence of his attorney. If that influence be vicious, untoward, criminal, the relation of trust is abused and becomes a source of wrong." *Id.* at 354, 137 N.E. at 670–671. (Emphasis added.)

The *Berman* court went on to state that "[t]he plaintiff and the [attorney] defendant were not *in pari delicto.* Whatever may be justly said in condemnation of the acts of the plaintiff is less than is necessary touching the acts of the [attorney] defendant". *Id.* at 355, 137 N.E. at 671.

The majority's position fails to take into account the realities of the attorney-client relationship. It overlooks the very nature and "great inequality of condition" that is frequently built into the relationship by virtue of the attorney's knowledge and the client's trust. Ms.

Evans alleges in her complaint that Attorney Cameron told her that she would be able to protect from bankruptcy proceedings the $10,000 in cash she possessed if she told the court that she gave the money to her mother. Attorney Cameron assured her that "no one would care". Ms. Evans was apprehensive about lying to the court, but Attorney Cameron again advised her that "she need not worry" and that "it would not be a matter of contention anyway." Ms. Evans' apprehensions about lying were met with the assurances of one she trusted to know the law and to protect her interests. Despite this, the majority finds, without allowing Ms. Evans the opportunity to be fully heard, that Ms. Evans and her attorney were equally at fault. She is told by the majority that Attorney Cameron's violations of his attorney's oath, his violations of his duty to the court, and his violations of his duty to his client, all of which could subject him to serious disciplinary action as well as criminal prosecution, are equally as offensive as her own actions in following his advice.

By denying Ms. Evans the opportunity to be fully heard and by presuming an equality of relationship between an attorney and the client, the majority reaches an unjust result which is also contrary to sound public policy. I dissent.

(In fairness to Attorney Cameron, it is important to note that he denies all of the allegations of Ms. Evans' complaint. However, for purposes of this action, we must assume the allegations of Ms. Evans' complaint are true. She alleges that on two occasions Attorney Cameron advised her to lie in a bankruptcy matter.)

I am authorized to state that CHIEF JUSTICE NATHAN HEFFERNAN joins in this dissent.