704 So.2d 748 (1998)
Daniel B. TURNER, Appellant,
v.
John U. ANDERSON, Jr., d/b/a Kirkpatrick & Lockhart LLP, and Stephen G. Topetzes, Appellees.
No. 96-4087.
District Court of Appeal of Florida, Fourth District.
January 28, 1998.
*749 Howard A. Tescher of Kipnis Tescher Lippman Valinsky & Kain, Fort Lauderdale, for appellant.
Charles M. Auslander of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, and Steven S. Goodman of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Fort Lauderdale, for appellees.

ON MOTION FOR REHEARING
KLEIN, Judge.
We deny appellees' motion for rehearing, but withdraw our opinion filed December 3, 1997, and substitute the following opinion, which clarifies our reasoning on the issue first addressed.
Appellant brought this suit against the appellees for legal malpractice arising out of their representation of appellant in a securities arbitration case. The trial court granted the appellees' motion for summary judgment on two grounds, first that appellant who had admittedly testified falsely was barred by the doctrine of in pari delicto, and second that the claims are an impermissible collateral attack on the arbitration award. We reverse.
Appellant and his employer, First Investors Corporation, were defendants in an arbitration proceeding based on securities violations and fraud. Both appellant and his employer were represented in the arbitration proceedings by the appellees. The arbitrators ruled in favor of the plaintiffs, awarding damages against appellant and, in a lesser amount, against appellant's employer. The award was affirmed in circuit court.
Appellant later brought this suit against the appellees, alleging legal malpractice and breach of fiduciary duty. Appellant alleged that counsel had represented him and his employer in the arbitration proceedings in such a way as to shift liability from the employer to appellant personally, breaching their duty to represent appellant. He also alleged that his counsel breached their duty by advising him to testify untruthfully, which he did, to his detriment.
We first address the second ground for the summary judgment, that the claims constitute an impermissible collateral attack on the arbitration award. Appellees rely on a line of cases beginning with Corey v. New York Stock Exchange, 691 F.2d 1205 (6th Cir.1982), and including Sander v. Weyerhaeuser Co., 966 F.2d 501 (9th Cir.1992), and Foster v. Turley, 808 F.2d 38 (10th Cir.1986). In those cases the courts held that the allegations in lawsuits, which were filed after arbitration proceedings became final, should *750 have been raised in the arbitration proceeding on the grounds that the arbitration award was procured by "corruption, fraud or undue means" pursuant to 9 U.S.C.A. § 10(a)(1) (1970).
We do not disagree with the holdings of the above cases on which appellees rely; however, none of those cases hold that a claim for legal malpractice, arising out of the representation of a party in an arbitration proceeding, is an impermissible collateral attack on an arbitration award. Appellees cite no authority holding that the allegations against them in this lawsuit, which were essentially that they had a conflict of interest in representing both the appellant and his employer in the arbitration proceeding, was a claim which should have, or could have been raised to set aside the arbitration award. In all of the cases on which appellees rely the plaintiff was attempting to use a subsequent lawsuit, in effect, to change the result in an arbitration proceeding, on grounds which could have been raised in the arbitration proceeding. Plaintiff's claim here is not an attempt to challenge the award to the parties recovering in the arbitration proceeding, but rather a totally separate and distinct claim which is not even subject to being arbitrated, so far as this record shows. We thus conclude that this suit is not a collateral attack on the arbitration award.
The issue which is not as easily disposed of is the first ground of the summary judgment, which is that appellant's perjury in the arbitration proceeding bars him from suing his counsel for advising him to commit perjury, because appellant was in pari delicto (equal in guilt or in legal fault). The question of whether a client who does an illegal act on advice of counsel can sue counsel for damages resulting therefrom is one of first impression in Florida. Courts in other jurisdictions have found it troubling, because either result is distasteful.
In Feld and Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick & Cabot, 312 Pa.Super. 125, 458 A.2d 545 (1983), the clients had committed perjury, falsified exhibits, and offered a witness a bribe not to testify, in labor proceedings. As a result they were convicted of crimes. They then sued their former counsel, alleging that they had engaged in the criminal conduct on advice of counsel, seeking compensatory and punitive damages for malpractice, emotional distress, deceit, and a refund of attorney's fees paid. Tracing the doctrine of in pari delicto from its inception in 1760, the court noted that it was subject to two qualifications, quoting from Story Equity Jurisprudence § 423 (14th ed.1918) as follows:
And indeed in cases where both parties are in delicto, concurring in an illegal act, it does not always follow that they stand in pari delicto; for there may be, and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age; so that his guilt may be far less in degree than that of his associate in the offense. And besides, there may be on the part of the court itself a necessity of supporting the public interests or public policy in many cases, however reprehensible the acts of the parties may be.
Feld, 312 Pa.Super. at 130, 458 A.2d at 548.
The Feld court observed that normally, in determining the applicability of in pari delicto, a court first determines whether plaintiff's guilt is far less in degree than defendant's, so as to make the doctrine inapplicable. If plaintiff's guilt is not far less, the court inquires if applying the doctrine would be contrary to public policy. The Feld court concluded, however, that it would not consider public policy under these facts, i.e., clients who knowingly committed a crime attempting to recover against lawyers who told them to do it, commenting:
[Public policy] is a very unruly horse, and once you get astride it you never know where it will carry you.[1]
Id., 312 Pa.Super. at 133, 458 A.2d at 549.
Rejecting the two step approach, the court simply relied on the general principle that courts will not lend their aid to causes of action grounded on illegal acts. Feld, 312 Pa.Super. at 138, 458 A.2d. at 552.
*751 Although the Feld court held that the clients could not recover any damages flowing from their criminal acts, it did allow them to recover the attorney's fees they had paid their former counsel, citing Berman v. Coakley, 243 Mass. 348, 137 N.E. 667 (1923), in which the court had allowed recovery of a fee paid pursuant to an illegal contract. As the Berman court observed:
The attorney and client do not deal with each other at arms' length. The client often is in many respects powerless to resist the influence of his attorney. If that influence be vicious, untoward, criminal, the relation of trust is abused and becomes a source of wrong.
Id. at 354-55, 137 N.E. at 670.
The Feld court concluded that allowing the clients to recover attorney's fees paid would come as close as possible to achieving the result that neither the clients nor their lawyers would have benefitted by their illegal acts. Feld, 312 Pa.Super. at 142, 458 A.2d at 554. See also Singleton v. Foreman, 435 F.2d 962 (5th Cir.1970), in which the court, applying Florida law, held that a client who signed an illegal contingent fee contract in a divorce case is not barred by in pari delicto from recovering money paid to the lawyer.
In Evans v. Cameron, 121 Wis.2d 421, 360 N.W.2d 25 (Wis.1985), a client perjured herself on advice of her lawyer. She then brought suit against her counsel for the damages resulting from her perjury, and the Wisconsin Supreme Court, relying on Feld, declined to allow her to proceed on the basis of the public policy exception to the doctrine of in pari delicto, stating:
Although the public interest is served by discouraging attorney misconduct, it would be inappropriate to promote that interest by removing the damage to those who deliberately and willfully lie under oath in bankruptcy proceedings. A court should not encourage others to commit illegal acts upon their lawyer's advice by allowing the perpetrators to believe that a suit against the attorney will allow them to obtain relief from any damage they might suffer if caught. The attorney's misconduct of advising clients to perform illegal acts should be discouraged by the threat of attorney disciplinary action.
Id. at 428, 360 N.W.2d at 29.
The Evans court did recognize the exception to the doctrine of in pari delicto where the client's guilt is far less in degree than counsel's, but concluded that this exception was inapplicable to those facts. Cases from other jurisdictions, in addition to Feld and Evans, which have recognized that the client may not be barred where the client's fault is far less than counsel's, are McKinley v. Weidner, 73 Or.App. 396, 698 P.2d 983 (1985); Jones v. Hyatt, 132 B.R. 853 (Bankr. S.D.Ohio 1991). For cases holding that client misconduct is a complete bar, see Blain v. The Doctor's Co., 222 Cal.App.3d 1048, 272 Cal.Rptr. 250 (1990); General Car & Truck Leasing Sys., Inc. v. Lane & Waterman, 557 N.W.2d 274 (Iowa 1996); Pantely v. Garris, Garris & Garris, P.C., 180 Mich.App. 768, 447 N.W.2d 864 (1989).
We need not decide whether the doctrine of in pari delicto is a bar where the client's misconduct is far less in degree than counsel's. In view of appellant's sophisticated background, and his deposition testimony in which he admitted committing perjury, with full recognition of the illegality of what he was doing, his guilt is not far less than that of counsel. And, although the doctrine of in pari delicto can give way to public policy under some circumstances[2], we agree with the reasoning of Evans and Feld that no public policy should allow appellant to recover damages as a result of engaging in criminal conduct such as occurred in this case. Nor need we decide whether the client can recover fees paid to counsel, because that is not part of appellant's claim.
*752 We therefore affirm the summary judgment insofar as it applied the doctrine of in pari delicto to bar appellant from recovering damages for having committed perjury. That defense would not, however, bar him from recovering on his separate claims that his former counsel caused him damage by improperly engaging in other litigation tactics in order to shift liability from his employer to him. We therefore reverse and remand for further proceedings.
WARNER, J., and PARIENTE, BARBARA J., Associate Judge, concur.
NOTES
[1] Quoting Richardson v. Mellish, 130 Eng.Rep. 294, 303 (1824), Burrough, Jr.
[2] In Kulla v. E.F. Hutton & Co., Inc., 426 So.2d 1055, 1057 n. 1 (Fla. 3d DCA 1983), a defendant who was being sued for fraud alleged the defense of in pari delicto on the ground that the plaintiff had participated in the fraud. In reversing a dismissal based on in pari delicto, the court explained:

The defense of in pari delicto is not woodenly applied in every case where illegality appears somewhere in the transaction; since the principle is founded on public policy, it may give way to a supervening public policy.