2005 SD 60

**Russ J. QUICK and ZR Consulting, Inc., Plaintiffs and Appellants,**

**v.**

**Rollyn H. SAMP, as Personal Representative of the Estate of John E. Burke, Defendant and Appellee.**

**No. 23319.**

Supreme Court of South Dakota.

Considered on Briefs March 21, 2005.

Decided May 11, 2005.

Thomas M. Issenhuth of Arneson, Issenhuth & Parent, LLP, Madison, for plaintiffs and appellants.

William P. Fuller, Susan M. Sabers of Woods, Fuller, Shultz and Smith, PC, Sioux Falls, for defendant and appellee.

ZINTER, Justice.

[¶ 1.] Russ J. Quick and ZR Consulting, Inc. brought this malpractice action against their former attorney, John Burke. The malpractice allegedly occurred during Burke's representation of Quick in a prior suit against a third-party. Quick alleged malpractice on two theories: (1) attorney negligence in preparation of the complaint; and, (2) fraud in Burke's preparation of a forged document that was used to correct a problem caused by the defective complaint. In this action, Burke's Personal Representative [1] moved for summary judgment alleging that Quick was *in pari delicto* with Burke in committing the forgery.[2] The trial court granted the motion, Quick and ZR Consulting, Inc. appeal, and we affirm.

### Facts and Procedural History

[¶ 2.] The prior suit arose out of a consulting contract between ZR Consulting, Inc. and Freshway, Inc. Quick, as the president and sole shareholder of ZR Consulting, Inc., retained Burke to sue Freshway for breach of contract. Burke prepared a complaint naming Quick, instead of ZR Consulting, Inc., as the plaintiff. In preparing for trial, it was determined that ZR Consulting, Inc. was the real party in interest. To rectify that problem, Burke prepared a corporate document entitled an "Action in Writing." By that writing, ZR Consulting, Inc. assigned its rights under the consulting contract to Quick. Burke apparently believed that to appear effective, the document had to be backdated to 1994 and that Quick's ex-wife was a necessary signatory.[3] Therefore, Burke asked Quick to sign his ex-wife's name on the document. Because Quick indicated that he could not "convincingly" sign her name, Burke signed her name in Quick's presence. Although both signatures were affixed on March 12, 2001, the document was also backdated to October 1994.

[¶ 3.] Due to a conflict in Burke's schedule, attorney Bob Burns was retained to try the breach of contract case. The trial began on March 15, 2001. Burns, unaware that the Action in Writing had been backdated and forged three days earlier, introduced the document into evidence. Although Quick was aware of the forgery, he sat by silently and did not inform Burns of these facts when the document was introduced. However, after opposing counsel questioned Quick about the legitimacy of his ex-wife's signature, Burns became suspicious and he questioned Quick about the matter at the conclusion of the first day of trial. Quick then admitted the forgery. After Burns advised Quick that he was partially responsible for the forged evidence, Quick told Burns to settle the case so that he could avoid having to testify under oath. Burns then settled the case for substantially more than Quick had authorized, but for less than what Quick had sought.[4]

---

**1.** After the commencement of this action, Burke died. Rollyn H. Samp, Personal Representative of Burke's estate, was substituted as the defendant.

**2.** No one has disputed that forgery occurred. For purposes of summary judgment review, we assume the truth of the facts alleged by Burke's Personal Representative concerning forgery.

**3.** At one time Quick's ex-wife was a shareholder in ZR Consulting, Inc.

[¶ 4.] Quick subsequently brought this malpractice action to recover that difference from Burke. Quick pleaded two causes of action. He first alleged that Burke was negligent in naming Quick, instead of ZR Consulting, Inc., as the plaintiff and real party in interest.[5] Quick also alleged fraud [6] in Burke's preparation of the Action in Writing.

[¶ 5.] Burke's Personal Representative subsequently moved for summary judgment alleging that Quick was *in pari delicto* with Burke in the preparation and use of the forged document. The trial court agreed and dismissed the action. Although both Quick and ZR Consulting filed a joint notice of appeal, only Quick has advanced arguments that the trial court should be reversed.[7]

4. There is no indication of any improper or unethical conduct by Burns in this case. It appears that he was duped by Quick and Burke.

5. Quick alleged negligence because the "statute of limitations ran, preventing ZR Consulting from being named as a party plaintiff."

6. Technically, Quick also pleaded a third cause of action for punitive damages. However, the punitive damages claim rises or falls with the fraud claim.

7. Appellant's initial brief, while making general references to ZR Consulting, Inc., argues exclusively for Quick. Therefore, if ZR Consulting, Inc. had any legal claim separate from Quick, it was not presented in Appellant's opening brief. The first mention of a possible separate claim by ZR Consulting, Inc. was made in the Appellee's brief. Even then, Appellant's Reply Brief responded with the sole argument that Burke had not established the requirements for piercing the corporate status of ZR Consulting, Inc. However, ZR Consulting's right to pursue a separate corporate claim does not involve the piercing of its corporate veil. The correct issue involves agency; that is, whether ZR Consulting, Inc. is precluded from bringing a separate action because of its agent's participation in the fraud. Thus, ZR Consulting, Inc. has

## Decision

[¶ 6.] Quick contends there are two reasons why the summary judgment should be reversed. Quick first contends that the trial court erred in concluding that he was *in pari delicto* with Burke. Alternatively, Quick maintains that, even if he were *in pari delicto* with Burke on the fraud, Quick's "cause of action for negligence [in the preparation of the complaint with the wrong real party in interest] was separable from the fraud and should have survived the motion for summary judgment."

[¶ 7.] Our standard of review on summary judgment is well-settled. In reviewing a grant of summary judgment, we must decide "whether the moving party

failed to brief or present a valid argument for a separate corporate claim against Burke that might survive independently of Quick's claim. For these reasons, we decline to formally consider any issue regarding a separate ZR Consulting corporate claim.

However, we do observe that ZR Consulting, Inc. was wholly owned by Quick, who stated that he was the sole shareholder, president, secretary, and treasurer of the company. There is also no material dispute about Quick's involvement with the Action in Writing. In such situations, companies are generally bound by the actions of their agents. *See Grassmueck v. American Shorthorn Association,* 402 F.3d 833, 838 (8thCir.2005) (applying *in pari delicto* and the sole actor doctrine, an agency principle of law, to conclude that "'where the principal and agent are one and the same,' the agent's knowledge is imputed to the principal despite the fact that the agent is acting adversely to the principal"); *Leafgreen v. American Family Mut. Ins. Co.,* 393 N.W.2d 275, 277 (S.D.1986) (stating that under agency law, "a principal may be held liable for fraud and deceit committed by an agent within his apparent authority, even though the agent acts solely to benefit himself"); *Price v. Ford Motor Credit Co.,* 530 S.W.2d 249, 254 (Mo.Ct.App.1975) (stating that a "corporate defendant is bound by the knowledge of all of its agents").

demonstrated the absence of any genuine issue of material fact and [established] entitlement to judgment on the merits as a matter of law." *Thornton v. City of Rapid City*, 2005 SD 15, ¶ 4, 692 N.W.2d 525, 528.

*Was Quick 'In Pari Delicto' With Burke*

 [¶ 8.] The doctrine of *in pari delicto* is defined as "[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." Black's Law Dictionary (8th ed 2004). "The doctrine ... is an application of the principle of public policy that '[n]o court will lend its aid to a man who founds his cause of action upon an immoral or illegal act.'" *Evans v. Cameron*, 121 Wis.2d 421, 360 N.W.2d 25, 28 (1985) (citing *Clemens v. Clemens*, 28 Wis. 637, 654 (1871)).

 [¶ 9.] Quick relies upon two exceptions to the doctrine. These exceptions are applicable: (1) when the parties are on unequal footing, the client relies on the advice of their attorney, and therefore, there is inequality or undue influence between the lawyer and client, *Cameron*, 360 N.W.2d at 28–29; and, (2) when denying relief would offend public morals to a greater extent than granting relief. *Gaines v. Wolcott*, 119 Ga.App. 313, 167 S.E.2d 366, 370 (1969). These exceptions were more fully explained by a Michigan Court of Appeals:

...two exceptions to the bar of in pari delicto [are] both drawn from Justice Story:

And indeed in cases where both parties are *in delicto* concurring in an illegal act, it does not always follow that they stand *in pari delicto;* for there may be and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age; so that his guilt may be far less in degree than that of his associate in the offense. And besides, there may be on the part of the court itself a necessity of supporting the public interests or public policy in many cases, however reprehensible the acts of the parties may be.

*Pantely v. Garris, Garris & Garris, P.C.*, 180 Mich.App. 768, 447 N.W.2d 864, 867–868 (1989) (citing 1 Story, Equity Jurisprudence (14th ed), § 423, pp 399–400).

[¶ 10.] Considering the public policy exception first, Quick argues that Burke's use of the *in pari delicto* defense is a greater violation of public policy than any wrong committed by Quick. He contends that Burke should not be allowed to assert the defense because his conduct was more egregious. However, as is further explained below, this is not a case in which a client innocently relied on an attorney's advice. This is a case where Quick's conduct was obviously wrongful and fraudulent, even to a layperson. Therefore, Burke's forgery does not offend public morals to a materially greater extent than Quick's forgery.

[¶ 11.] Moreover, we have applied the doctrine even when lesser degrees of fault are involved in the use of fraudulent documents.

The doctrine of pari delicto does not require equal degrees of negligence to preclude indemnity.... If a person seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act of omission by knowledge or acquiescence in it on his part, or fails to perform some duty in connection with the omission which he has undertaken, he is deprived of the right of indemnity.

*Massey Ferguson Credit Corp. v. Bice*, 450 N.W.2d 435, 440 (S.D.1990) (emphasis add-

ed) (applying the doctrine of *in pari delicto* from indemnity among joint *tort* feasors to indemnity among joint *fraud* feasors) (citing *Degen v. Bayman*, 86 S.D. 598, 604, 200 N.W.2d 134, 137 (1972)). Therefore, even if Burke were slightly more culpable, where the wrongful conduct was obvious to all, the parties' relative degree of fault is not a public policy justification requiring indemnity.

[¶ 12.] Quick also asserts that denying him relief would offend public policy because "an attorney who anticipates a possible malpractice action will be in a position where he can create his own built-in defense" by involving his client in the fraud. However, this "built-in defense" theory could only have merit if an attorney were able to convince an innocent client to partake in activity that is not *knowingly and openly fraudulent*. In such a case, presumably involving a more legally complex or obscure fraud, a more compelling argument could be made to relieve a client of unintentional, but wrongful, conduct. Here, however, Quick was fully aware of the forgery by which he was assisting his cause. Under such circumstances, relief is precluded. As the Wisconsin Supreme Court explained in a similar case involving perjury:

> There may be circumstances in which the advice given by an attorney is so complex that the client would be unaware of the wrongfulness involved in following that advice. In such circumstances, more weight may be given to the influence an attorney will have over the client and the amount of reliance which the client can justifiably place in the attorney. The wrongfulness of lying while under oath, however, is apparent. Absent some allegation of special circumstances constituting an exception to the rule of *in pari delicto* independent of the attorney-client relationship, the client's deliberate act of lying under oath

places that client *in pari delicto* with the attorney who advised that client to lie. *Cameron*, 360 N.W.2d at 28–29.

[¶ 13.] We see no distinction with forgery. Thus, we find no merit to Quick's public policy arguments under these facts. When a client participates in obviously fraudulent conduct, the courts may not permit "a fraudfeasor who invokes the court's jurisdiction to profit from his own fraud by recovering damages." *Mettes v. Quinn*, 89 Ill.App.3d 77, 44 Ill.Dec. 427, 411 N.E.2d 549, 551 (1980) (citations omitted).

[¶ 14.] Quick next contends that he was on "unequal footing" when he engaged in the fraudulent conduct. The "unequal footing" exception, as applied in this case, would require "circumstances of . . . undue influence, or great inequality of condition . . . ." *Cameron*, 360 N.W.2d at 28 (citing *Feld & Sons v. Pechner, Dorfman, Etc.*, 312 Pa.Super. 125, 458 A.2d 545 (1983)).

[¶ 15.] Quick claims entitlement to this exception because he "deferred to Burke's expertise" and was told the Action in Writing was merely a "housekeeping matter." Although we acknowledge the undue influence and great inequality of condition exception, we believe that it is inapplicable here because backdating a document, counseling in a forgery, and allowing the use of forged evidence in court are so obviously fraudulent that no deferral to Burke's expertise was necessary. Clearly, Quick's conduct was not premised upon such legally complex concepts that Quick would have been unaware of the wrongfulness of his conduct. *See Pantely*, 447 N.W.2d at 868 (stating that a "law degree does not add to one's awareness that perjury is immoral and illegal, any more than an accounting degree adds to one's awareness that tax fraud is immoral and illegal"). Therefore, Quick's obviously wrong-

ful conduct disqualified him from using the unequal footing exception. That result is fully justified by this record reflecting that Quick had actual knowledge of his wrongful conduct; i.e. he specifically deferred to Burke to sign his ex-wife's name, explaining that he could not replicate the signature "convincingly" enough.

▇▇▇ [¶ 16.] In the final analysis, it is not important that Quick's knowledge of the legal ramifications of the document was less than Burke's, as it was clear to a layperson that Quick was participating in a forgery. It was also obvious that he was submitting a forgery to a fact finder in a judicial proceeding. *See Bice,* 450 N.W.2d at 439–440. Therefore, Quick cannot escape his own conduct.

> "When parties seek equity in the court, they must do equity, which includes entering the court with clean hands. A [party] who does not come into equity with clean hands is not entitled to any relief herein, but should be left in the position in which the court finds him." ... The maxim that "he who comes into equity must come with clean hands," is most often utilized "where granting affirmative equitable relief would run contrary to public policy or lend the court's aid to fraudulent, illegal or unconscionable conduct."

*Himrich v. Carpenter,* 1997 SD 116, ¶¶ 21–22, 569 N.W.2d 568, 573 (internal citations omitted). Because Quick came to the court with unclean hands, and because his conduct was obviously wrongful and fraudulent, he was *in pari delicto* with Burke.

### Separate Cause of Action for Negligence

▇▇ [¶ 17.] Quick contends that "[a]nother exception exists where the 'in pari delicto' conduct is separable from the conduct for which it is being asserted as a defense." Thus, Quick argues that, even assuming he was *in pari delicto* with Burke on the fraud cause of action, that "wrongful act does not carry over and cause a forfeiture of all other causes of action [i.e. negligence] that Quick and ZR Consulting, Inc. have against Burke." We disagree because, even if the causes of action were considered separately, Quick's damages on the negligence claim *resulted from* his wrongful conduct. Stated another way, because his own conduct was a proximate cause of his damages on both the fraud and negligence causes of action, both claims are barred.

▇▇▇ [¶ 18.] As previously noted, the doctrine of *in pari delicto* provides that one "who has participated in wrongdoing may not recover damages *resulting from* the wrongdoing." *See supra* ¶ 8 (emphasis added). This means that Quick may not recover on either claim if his damages were proximately caused by his own conduct. Proximate cause, or legal cause, is "a cause that produces a result in a natural and probable sequence and without which the result would not have occurred." *Estate of Gaspar v. Vogt, Brown & Merry,* 2003 SD 126, ¶ 6, 670 N.W.2d 918, 921. However, it is not necessary that a proximate cause is the only cause of a result, as "[i]t may act in combination with other causes to produce a result." *First Premier Bank v. Kolcraft Enterprises, Inc.,* 2004 SD 92, ¶ 62, 686 N.W.2d 430, 454 (citations omitted). Therefore, in applying the doctrine of *in pari delicto:*

> ... where one is engaged with another in the simultaneous [wrongful conduct] ... he cannot recover damages for injuries inflicted upon him through the negligence of his joint wrongdoer unless the violation ... *was not a contributing cause* of the injuries....

*Gaines,* 167 S.E.2d at 368 (emphasis added).

[¶ 19.] Quick cannot make that showing. Quick testified in his deposition that he made the settlement decision after Burns informed him of the consequences of his involvement in introducing the forged document. Thereafter, Quick indicated that he could not return to court and "testify without ... either: A, telling the judge exactly what happened with this document, or, B, settling the case. And so, I mean, we went after settling the case." Thus, Quick is seeking damages that were caused by the settlement he authorized. And, because his own conduct was a contributing cause of that settlement, he may not recover.

[¶ 20.] We conclude by pointing out that Quick had alternatives. Rather than engaging in obviously fraudulent conduct, his remedy was to refuse to participate in a forgery, or at the very least, to have disclosed the forgery to his new attorney so the evidence would not have been introduced at trial. If this non-fraudulent course of conduct ultimately resulted in the dismissal of his case for failure to name the real party in interest, Quick may then have proceeded against Burke for negligence. However, having chosen to participate in an obvious fraud, Quick is without a remedy against his joint fraudfeasor.

[¶ 21.] Affirmed.

[¶ 22.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, and MILLER, Retired Justice, concur.

[¶ 23.] MILLER, Retired Justice, sitting for SABERS, Justice, disqualified.

