WARNER, J.
A jury determined that appellee/cross-appellant Maroone Honda fraudulently induced the appellants to enter into a vehicle purchase, causing appellants $5,000 in damages; violated the Florida Deceptive and Unfair Trade Practices Act (“FDUT-PA”), causing $1,380 in damages; and violated the Florida Credit Service Organization Act (“FCSOA”) but causing no damages. The trial court entered a judgment notwithstanding the verdict as to the fraudulent inducement claim, concluding that the claim was barred by the in pan delicto doctrine. It also determined that the Florida Credit Service Organization Act did not apply to the transaction. It entered judgment on the FDUTPA claim. Appellants appeal the court’s entry of judgment notwithstanding the verdict on the fraudulent inducement claim as well as the Credit Service Organization Act claim, and appellee appeals the judgment against it on the FDUTPA claim. We affirm the judgment notwithstanding the verdict but reverse the judgment on the FDUTPA claim, because the jury’s damage verdict did not constitute damages either pled or allowed pursuant to the act.
The facts of this case are lengthy and complicated, not all of which are necessary to the determination of the issues in this case.[1] The Dorestins wanted to purchase a used vehicle. Through Mrs. Dorestin’s sister, they contacted Michael Clark, who took them to Maroone Honda to look at *821 vehicles. A Maroone salesman, Mr. Simms, was present with Clark at the dealership. During the process of selecting and securing financing on the vehicle, Clark told the Dorestins that their credit was bad. He suggested paying to get a co-signer on a loan and making up employment for Mrs. Dorestin. Although she knew that this was probably illegal, she filled out portions of the credit application, including parts involving her non-existent employment. She also knew that Clark was going to supply fake employment records in support of the credit application.
They could not complete the first transaction, because the co-signer whom Clark arranged to have co-sign the note never appeared to sign the documents. The Dorestins then shifted their attention to a second vehicle. With the assistance of Maroone’s financing director, they secured financing on that vehicle with their credit application showing Mrs. Dorestin’s fictitious employment. They also agreed to pay additional cash to close the deal. As part of that transaction, although Clark had already secured $3,000 from them, he asked Mr. Dorestin for an additional $3,000 check for the car, and promised that the check would not be cashed. Mrs. Dor-estin drove away with the vehicle.
Once in possession of the vehicle, the Dorestins discovered that the year-old car had 40,000 miles on'it instead of the 12,000 represented at the dealership. Also, after they returned home, Mr. Dorestin told his wife about the additional $3,000 check that he had written.
Angry at this turn of events, Mrs. Dor-estin put a stop payment on the $3,000 check to the dealership. When the finance director, Mr. Young, discovered that they had stopped payment on the check, he threatened to have them arrested. Mrs. Dorestin told him that they had already paid Clark the $3,000. Young advised them that Clark did not work for Maroone. Eventually, according to the testimony, Clark paid the dealership the $3,000 which constituted the money that the Dorestins had paid to Clark and made up the down payment on the vehicle.
The Dorestins also complained to the dealership about the excessive miles on the Caravan. After Young and the used car sales manager learned of the excessive miles on the Caravan, they informed the Dorestins that the finance company did not want to continue with the contract. The financing company considered it “high risk” due to the high mileage on the vehicle. Young ripped the contract up in front of them and said they had to “go into a new deal.”
The salesman showed the Dorestins a second vehicle, a 2001 Honda Odyssey, which was older and yet cost more. With no offer of a refund, the Dorestins didn’t want to lose their $4,800 down payment, so they negotiated over the price, and eventually received credit of $1,000 more on their trade-in vehicle. The actual motor vehicle installment sales contract reveals a purchase price of $17,461.04, a cash down payment of $4,000, and a trade-in credit of $1,800. Clark was not involved in any of the negotiations over the purchase of the Odyssey.
As a result of the changes in financing, the interest rate on the loan increased significantly. Mrs. Dorestin testified that they were also told by Mr. Young that they had to purchase a two-year extended warranty in the amount of $1,380 which was required by the lender. Including the finance charge for the life of the loan, the total that they were obligated to pay for the Odyssey amounted to $28,246.72. The Dorestins actually paid the loan off early, thus reducing the actual interest they paid.
*822 Unhappy with their treatment by the dealership, including the fact that a collection agency harassed them about the check on which they had stopped payment, the Dorestins sued Maroone Honda alleging various causes of action. They alleged fraudulent inducement to purchase the Odyssey based on all the circumstances leading up to the purchase, including the transaction involving the initial purchase of the Caravan.
They also alleged causes of action for violation of the Florida Deceptive and Unfair Trade Practices Act. The Dorestins’ complaint also included a claim under the Florida Motor Vehicle Retail Sales Finance Act (“FMVRSFA”) and a claim under the Florida Credit Service Organizations Act (“FCSOA”) for which they sought damages, including a return of monies paid, and a declaration that the contract was void.
Maroone Honda filed a counterclaim seeking damages and rescission based on the credit application signed by the Dores-tins which falsely showed that Mrs. Dores-tin was employed. Maroone also raised three defenses — unclean hands, fraudulent representations, and in pari delicto[2].
In their response to the counterclaim the Dorestins contended that Maroone Honda had filled out the credit application and knowingly put the false information on it; thus, the Dorestins claimed that Ma-roone suffered no damages because the company knew of the misrepresentation.
At trial, the Dorestins offered expert evidence, over Maroone’s strenuous objection, that the vehicle had been in an undisclosed accident, reducing its value. Ma-roone argued that the Dorestins had never pled that it had fraudulently represented the condition of the vehicle; nevertheless, the court permitted the jury to hear the evidence.
After a lengthy trial, Maroone moved for directed verdict on various grounds, including that the Dorestins should be barred from recovery on any of the claims because of the in pari delicto defense, but the court submitted all claims to the jury. In particular, the court submitted to the jury the factual question as to whether the Dorestins engaged in fraudulent misrepresentations of their financial condition on the credit application. However, the court reserved to the post-verdict stage the application of that finding upon the various causes of action. The jury found that Clark acted as the actual or apparent agent of Maroone. The jury determined that Maroone had fraudulently induced the Dorestins to sign the retail installment sales contract for the 2001 Honda Odyssey resulting in $5,000 in damages; that Ma-roone did not violate the Florida Motor Vehicle Retail Sales Finance Act; that Ma-roone did violate the Florida Deceptive and Unfair Trade Practices Act resulting in $1,380 in damages; and that Maroone violated the Florida Credit Service Organization Act, but it resulted in zero damages. Finally, the jury answered “yes” to the question, “Did the Dorestins submit false information on their credit application to induce Maroone Honda into the transactions?”
Both sides filed post-trial motions. As a result of those motions and after an extensive hearing, the court determined that the evidence was undisputed that Clark was not an agent for Maroone. The court also determined that the Dorestins also engaged in fraud, which prevented them from recovering on the fraud in the in *823 ducement claim. The court applied the in pari delicto doctrine and entered a judgment notwithstanding the verdict for Ma-roone on the fraudulent inducement claim. The court entered judgment for the Dores-tins on Maroone’s violation of FDUTPA. Regarding the Florida Credit Service Organization Act, the court ruled that FCSOA did not apply, but since the jury had awarded no damages it was moot. Both parties appeal the final judgment.
We first address the trial court’s entry of a judgment notwithstanding the verdict on the Dorestin’s fraudulent inducement claim. Review of a ruling on motion for judgment notwithstanding the verdict is de novo. City of Hollywood v. Hogan, 986 So.2d 634, 640-41 (Fla. 4th DCA 2008). The Dorestins argue that evidence supported the claim that Clark was the agent of Maroone, but even if he were not, the court improperly applied the in pari delicto doctrine to this case. We conclude that the court did not err in entering judgment for Maroone, as the trial court did not err in its application of the in pari delicto doctrine to this case where the Dorestins participated in the illegal conduct of falsifying employment history to secure a loan.
We discussed the doctrine in Turner v. Anderson, 704 So.2d 748 (Fla. 4th DCA 1998). There, both an employee and his company were defendants in an arbitration proceeding. The arbitrators ruled against both, awarding the greater amount of damages against the employee. Later, the employee sued his attorney, who had represented both the employer and employee. The employee alleged that the lawyer had encouraged him to lie in his testimony, which he did to his detriment. The employee also alleged that the lawyer conducted a defense so as to shift a greater share of the liability to the employee instead of the employer. We cited Feld and Sons, Inc. v. Pechner, Dorfman, Wolfee, Rounick, & Cabot, 312 Pa.Super. 125, 458 A.2d 545 (1983), which noted that in Story Equity Jurisprudence, two qualifications to the application of the doctrine were recognized:
And indeed in cases where both parties are in delicto, concurring in an illegal act, it does not always follow that they stand in pari delicto; for there may be, and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age; so that his guilt may be far less in degree than that of his associate in the offense. And besides, there may be on the part of the court itself a necessity of supporting the public interests or public policy in many cases, however reprehensible the acts of the parties may be.
Feld, 312 Pa.Super. at 130, 458 A.2d at 548. Given the sophistication of the employee, as well as his understanding of the illegality of committing perjury, we applied the doctrine and affirmed the dismissal of the employee’s suit based upon the perjury.
In the present case, the trial court applied Turner when it considered whether, under the doctrine of in pari delicto, the wrongful act barred recovery by the Dor-estins. While the Dorestins were unsophisticated in financial matters, Mrs. Dor-estin testified that she knew that falsifying her employment history was wrong. The jury found that the Dorestins had submitted false information on the credit application. The trial court could not condone those illegal acts. It did weigh the comparative positions of both Maroone and the Dorestins and determined that the Dores-tins had full knowledge of their illegal acts and should not be allowed to recover on the fraudulent inducement claim. The *824 court found that courts should not reward either party for fraudulent conduct. The court specifically “weighted] and assess[ed] the guilt, shall we say, of the alleged frauds perpetrated.... ” Based upon the trial court’s superior vantage point, having listened to all the witnesses and being able to judge their credibility, the jury’s findings, and the court’s application of the law, the court did not err in entering a judgment notwithstanding the verdict on the fraudulent inducement claim.
The Dorestins also appeal the trial court’s determination that the Credit Service Organizations Act does not apply to car dealers who assist their customers in finding financing. Maroone was not a “creditor” within the meaning of section 817.7001(2)(a), Florida Statutes (2004), which defines a credit service organization. That section provides that a credit service organization, to which the act’s provisions apply, means:
[A]ny person who, with respect to the extension of credit by others, sells, provides, performs, or represents that he or she can or will sell, provide, or perform, in return for the payment of money or other valuable consideration, any of the following services:
1. Improving a buyer’s credit record, history, or rating;
2. Obtaining an extension of credit for a buyer; or
3. Providing advice or assistance to a buyer with regard to the services described in either subparagraph 1. or sub-paragraph 2.
As the trial court noted, no facts came out at trial which would somehow create liability under this section for Maroone. Although there are no Florida cases on this issue, in Cannon v. William Chevrolet/Geo, Inc., 341 Ill.App.3d 674, 276 Ill.Dec. 593, 794 N.E.2d 843 (Ill.App.Ct.2003), the court held that an automobile dealership which assisted its customers in obtaining financing for the purchase of vehicles was not a credit service organization, because the customer did not pay the dealership a fee or give other valuable consideration for assisting in obtaining a loan. Because there were no facts proved which would place the dealership within the confines of the act, we agree with the trial court that the act did not apply.
We reverse on the cross-appeal, concluding that the Dorestins could not recover under FDUTPA, based upon the jury’s verdict. The trial court should have entered a judgment notwithstanding the verdict on this claim. The jury found that Maroone violated FDUTPA and awarded $1,380. In their brief the Dorestins acknowledge that the sum constituted the amount of the extended service contract that the Dorestins purchased, and that is the claim which should be considered. The Dorestins maintain that Young forced them to purchase the extended warranty and told them that they could not finance the vehicle without it.
The specific claim regarding the warranty contract was never pled as one of the deceptive acts that Maroone allegedly committed. The Dorestins claimed that they had not been provided a buyer’s guide (a sheet of information pasted on the window of the vehicle) which would show how much original warranty remained. They did not make any allegation in connection with the extended warranty which they purchased. Although they now attempt to marry the failure to disclose the buyer’s guide to the purchase of the extended warranty, we fail to see the connection.
Proof of actual damages is necessary to sustain a FDUTPA claim. See Rollins, Inc. v. Heller, 454 So.2d 580, 585 (Fla. 3d DCA 1984). The statute does not allow the recovery of other damages, such *825 as consequential damages. See Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati, 715 So.2d 311 (Fla. 4th DCA 1998). The Dorestins did not prove any actual damages connected with the failure to supply the window buyer’s guide. The cost of the service contract was not the actual damage of failing to supply it. If the buyer’s guide had been disclosed, it would have revealed that the original warranty had expired. Thus, if the Dorestins wished to protect themselves against potential repairs and defects, they would have purchased the extended warranty, which they did. Moreover, the Dorestins have already collected on the extended warranty plan for repairs needed to the vehicle. Having accepted its benefits, they should now be estopped from asserting that they should recover its expense under FDUTPA. See Billings v. City of Orlando, 287 So.2d 816, 318 (Fla.1973) (“[A] person may be estopped from asserting rights otherwise existing by virtue of the acceptance and retention, by one having knowledge or notice of the facts, of benefits from a transaction, instrument, regulation or statute which he might have rejected or contested.”).
Finally, the Dorestins claim that they were told by Maroone that they had to buy the extended warranty to get the car; however, this contradicts the actual language of the warranty contract placed in evidence, which states: “The ... purchase of this contract is not a requirement to purchase your vehicle or obtain financing.” “Assuming for purposes of argument that the oral statement is fraudulent, a party cannot recover for fraudulent oral representations which are covered in or contradicted by a later written agreement.” Giallo v. New Piper Aircraft, Inc., 855 So.2d 1273, 1275 (Fla. 4th DCA 2003). A FDUTPA claim cannot be stated based upon oral representations which are in contradiction of written terms of a contract, because reliance on such representations is unreasonable as a matter of law. See Mac-Gray Serv., Inc. v. DeGeorge, 913 So.2d 630, 634 (Fla. 4th DCA 2005).
For all of the foregoing reasons, we reverse the judgment in favor of the Dor-estins on the cross-appeal. We affirm the judgments in favor of Maroone Honda. We remand for entry of judgment in accordance with this opinion.

Affirmed in part, reversed in part and remanded.

LEVINE, J., concurs.
GROSS, C.J., concurs specially with opinion.

. Review of this record has been especially difficult because the court reporting firm, Official Reporting Service, LLC, and its reporter did not include an index, which is a violation of Florida Rule of Appellate Procedure 9.200(b)(2). "Each volume [of the transcript] shall be prefaced by an index containing the names of the witnesses, a list of all exhibits offered and introduced in evidence, and the pages where each may be found.” Other good court reporters also include the pages where opening and closing argument, motions for directed verdict, and jury instruction conference and charge are also found. In the future, transcripts not containing the proper index may be rejected. Appellants also have the duty to see that the transcript is submitted correctly. See Fla. R.App. P. 9.200(e).

. Black's Law Dictionary defines the "in pari delicto doctrine” as "The principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.” Black’s Law Dictionary 806 (8th ed. 2004).